2022 IL App (1st) 210158
No. 1-21-0158
Opinion filed ---, 2022

THIRD DIVISION

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| OMEGA DEMOLITION CORPORATION, | ) | |
| | ) | Appeal from the Circuit Court |
| Plaintiff-Appellant, | ) | of Cook County. |
| | ) | |
| v. | ) | No. 19 L 9102 |
| | ) | |
| THE ILLINOIS STATE TOLL HIGHWAY | ) | The Honorable |
| AUTHORITY, | ) | Daniel J. Kubasiak, |
| | ) | Judge Presiding. |
| Defendant-Appellee. | ) | |

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice McBride and Justice Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff, Omega Demolition Corporation, filed a complaint against the Illinois State Toll Highway Authority (Tollway), alleging that the Tollway wrongfully revoked its A15 subcontractor approvals without notice or a hearing, resulting in monetary damages sustained by plaintiff, who was unable to continue doing work on Tollway projects without A15 approvals. The initial complaint did not indicate the nature of the cause of action, but only the course of events and the claimed damages. The Tollway moved for dismissal pursuant to both section 2-615 and section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619(a)(9), 2-619.1 (West 2018). The trial court granted the dismissal pursuant to section 2-615 and granted plaintiff the opportunity to replead. Plaintiff filed an amended complaint

that added nothing more to state a cause of action but included as exhibits the contracts and subcontracts relevant to the complaint that were not initially included. The Tollway once again moved to dismiss under section 2-615 and requested that, in the alternative, the court review its motion to dismiss under section 2-619(a)(9). In plaintiff's response to the second motion to dismiss, plaintiff clarified that its complaint was one based on a denial of due process. The trial court again granted the dismissal under section 2-615 and granted plaintiff a second opportunity to replead. Plaintiff filed a second amended complaint alleging a protectable interest in its A15 approvals and alleging a denial of due process. The Tollway once again moved to dismiss under section 2-615 and once again encouraged the court to, in the alternative, review its motion to dismiss pursuant to section 2-619(a)(9). The trial court dismissed with prejudice pursuant to section 2-615, citing plaintiff's failure to plead facts sufficient to state a cause of action.

¶ 2        In this timely appeal, plaintiff argues (1) that its second amended complaint cured the indicated defects in its first amended complaint by providing a factual basis for its protectable interest in its A15 approvals and by providing facts about the actions it and the Tollway took or did not take to restore its A15 approvals; (2) that if its factual pleadings were insufficient, or if it was required to allege facts showing that the Tollway had abused its authority, it should have been given a third opportunity to replead; (3) that the Tollway's revocation of plaintiff's A15 approvals was not an action that falls within the exercise of the Tollway's discretionary powers; (4) that the order from the chief procurement officer revoking plaintiff's interim suspension served as a directive to the Tollway, that it had a duty to follow, to reinstate plaintiff's A15 approvals; and (5) that plaintiff's A15 approvals are similar to a governmentally awarded license and should be treated the same with regard to what process is followed.

¶ 3    For the following reasons, we affirm the decision of the trial court.

BACKGROUND

¶ 4    The facts of this case are undisputed. Prior to April 14, 2016, plaintiff held six separate contracts to perform bridge demolition work on Illinois state highway projects as a subcontractor on contracts between other companies and the State of Illinois. Two of those contracts were with Judlau Contracting, Inc. (Judlau) and four were with F.H. Paschen, S.N. Nielsen & Associates, LLC (FH Paschen). For a subcontractor to perform any work on a Tollway project, that subcontractor must complete an A15 subcontractor approval form, which, upon approval from the Tollway, grants the applicant permission to work as a subcontractor on Tollway projects. Plaintiff submitted an A15 form and obtained approval from the Tollway. While appellant cites no authority, aside from its own complaint, to establish that A15 approvals are required to serve as a subcontractor on a Tollway project, the Tollway confirms in its brief that it does require subcontractors to be approved by the Tollway and the same is reflected in the contracts in the record between FH Paschen and the Tollway.

¶ 5    On April 5, 2016, one of plaintiff's employees was killed and three were injured in an incident that occurred on a worksite during the course of work being performed pursuant to plaintiff's contract with Judlau to perform bridge demolition work on the span of I-90 known as the Jane Addams Memorial Tollway. There is no information in the record on appeal indicating whether plaintiff was responsible for the incident, nor the outcome of the Occupational Safety and Health Administration (OSHA) investigation of the incident causing the death and injuries. However, this court takes judicial notice of the fact that OSHA cited plaintiff for multiple health and safety violations related to the incident, including one willful safety violation, on October 3, 2016. Plaintiff asserts in its appellate brief that it, among others,

has settled with the estate of the employee killed in the incident and that no blame has been placed on plaintiff for the event, nor has the "cause of the fatality" been determined. According to an affidavit from Paul Kovacs, the Tollway's chief engineer, Kovacs was responsible for overseeing all engineering activities for the Tollway. Kovacs averred that between April 5, 2016, and April 14, 2016, he conducted an internal investigation of the fatal incident that led to the revocation of plaintiff's A15 approval, during which he discovered that plaintiff deviated from the demolition plan without approval from him and that he believes that the incident was caused, "in whole or in part, by [plaintiff's] unauthorized deviation from the demolition plan." Kovacs averred that it was based upon his investigation that he recommended to the Tollway that plaintiff's A15 subcontractor approval be revoked. Nine days after the incident, in a letter dated April 14, 2016, the same day Kovacs' investigation was completed, the Tollway informed FH Paschen that plaintiff's A15 approvals had been revoked on the four contracts FH Paschen held on which plaintiff worked as a subcontractor. The letter instructed FH Paschen to replace plaintiff on any remaining work plaintiff had yet to complete on those projects but gave no reason for the revocation of plaintiff's A15 approvals. While no evidence is provided in the record to show that the Tollway revoked plaintiff's A15 approvals for the projects it was contracted with Judlau to work on, plaintiff's communications with the Tollway after the revocation mention that its A15 approvals for the Judlau projects were revoked and the Tollway does not dispute that claim in either its responses to those communications or in its brief.

¶ 6     On April 18, 2016, Ellen H. Daley, the Chief Procurement Officer of Illinois for General Services (CPO) issued an interim suspension preventing plaintiff from doing any work for the Tollway. The CPO is not under the authority of the Tollway. The CPO's letter stated that initial

investigation indicated plaintiff had deviated from its own submitted and approved plans for its demolition work and thereby caused the fatal accident of April 5, 2016, that plaintiff's president confirmed the deviation from the plans and could offer no justification, and that plaintiff may have violated job-site safety specifications. The CPO's letter informed plaintiff that pursuant to section 6.520 of Title 44 of the Illinois Administrative Code (44 Ill. Adm. Code 6.520 (2011)), a contractor or subcontractor can be suspended due to "acts or omissions that indicate that the contractor or subcontractor lacks integrity and honesty in the conduct of business or the performance of contracts" and that an interim suspension could be and, by way of the letter, was being issued pending the outcome of a full investigation by the Tollway and OSHA. Plaintiff challenged the CPO's decision pursuant to section 6.620 of Title 44 of the Illinois Administrative Code (44 Ill. Adm. Code 6.620(b) (2011)) and the CPO, upon review of plaintiff's submitted documentation and argument, terminated the interim suspension of plaintiff on May 3, 2016. The termination of the interim suspension did not serve to restore plaintiff's A15 approvals, as the requirement of A15 approvals and approval of A15 approvals is a Tollway policy not connected to the CPO's policies.

¶ 7    There is no information in the record on appeal as to what formal process, if any, exists to appeal the revocation of or pursue the reinstatement of a subcontractor's A15 approvals. Plaintiff contacted the Tollway on multiple occasions between May 6, 2016, and January 17, 2017, to attempt to discuss having its A15 approvals reinstated.

¶ 8    On May 6, 2016, Chuck Gerage, plaintiff's president, sent an e-mail to the Tollway following up from an alleged April 8, 2016, meeting. There is no information in the record or in either party's filings in the trial court or on appeal that indicate what occurred at the April 8, 2016, meeting. Gerage mentions in the e-mail that he participated in an "off the record"

5

conversation at this meeting, but it is unclear if the entire meeting was "off the record." In the e-mail, Gerage professed his wish to mend plaintiff's relationship with the Tollway and notes that a "corrective action plan" allegedly requested by the Tollway during the April 8, 2016, meeting was timely submitted. It is undisputed that no response to this e-mail was sent.

¶ 9    On May 13, 2016, plaintiff's attorney sent a letter, also sent as an e-mail, to the Tollway noting that Gerage's e-mail never received a response and requesting a meeting with the Tollway. The letter further noted that plaintiff had "never received a formal explanation of the Tollway's actions, nor has the Tollway advised [plaintiff] whether [plaintiff] is eligible for future work on Tollway projects." The letter requested that if the Tollway had concerns about [plaintiff's] work site safety or practices, [plaintiff] would like to know what those concerns are so that it might address them."

¶ 10    In its appellate brief, plaintiff claims that prior to May 19, 2016, plaintiff received an e-mail from the Tollway's counsel indicating that the Tollway was not willing to meet with plaintiff to discuss the termination of plaintiff's A15 status. Plaintiff cites to its second amended complaint for this assertion, and no such e-mail is included in the record on appeal. The Tollway does not dispute that plaintiff received such an e-mail.

¶ 11    On May 19, 2016, plaintiff's attorney sent a letter, also sent as an e-mail, to the Tollway. In the letter, plaintiff's attorney asserts that an e-mail response was received indicating the Tollway's unwillingness to meet with plaintiff or plaintiff's attorney, but that the Tollway's counsel would be willing to discuss matters with plaintiff and its attorney. Plaintiff's attorney submitted a series of questions in the letter regarding plaintiff's current and future eligibility to work on Tollway projects, the reason the Tollway instructed its prime contractors to terminate their subcontracts with plaintiff, what criteria the Tollway would use to determine

plaintiff's eligibility, and what legal authority gave the Tollway the authority to render plaintiff ineligible to perform work on Tollway projects.

¶ 12      On January 17, 2017, plaintiff's attorney sent a letter, also sent as an e-mail, to the Tollway. In the letter, plaintiff's attorney noted that "[a]t a Policy Committee meeting last week, the Tollway's Executive Director, Greg Bedalov, advised the attendees that [plaintiff] is not suspended by the Tollway and is eligible to perform work on Tollway projects." The letter further asserts that plaintiff's attorney was informed by the Tollway's attorney that Bedalov had said that plaintiff was eligible to perform work on Tollway projects during the meeting. The letter goes on to state that both attorneys had discussed that the revocation of plaintiff's A15 approvals "was intended to allow for a cooling off period to enable to Tollway to gather facts concerning a fatal accident involving [an employee of plaintiff's] on one of the I-90 projects, and was not intended to revoke [plaintiff's] eligibility to work on other Tollway projects." The letter closed with a request for a short letter from the Tollway confirming plaintiff's eligibility to work on Tollway contracts.

¶ 13      On January 23, 2017, the Tollway's attorney returned a letter, also sent as an e-mail, indicating that "the Chief Procurement Officer (General Services) generally retains authority as to suspensions of Tollway contractors, and there is no such order in place regarding [plaintiff] that we are aware of." The letter continues to say that the Tollway's attorney would "not necessarily agree" with plaintiff's attorney's characterizations of referenced meetings or phone calls but that he did not think that altered anything substantively.

¶ 14      No further correspondence is included in the record on appeal. It is undisputed that the Tollway did not reinstate plaintiff's A15 approvals on any of the six contracts on which its A15 approvals were revoked. There is no information in the record on appeal or in either

7

party's filings in the trial court or on appeal to indicate whether plaintiff has since applied for an A15 approval on any other project, nor what outcome may have resulted from such an effort.

¶ 15                                    I. Initial Complaint

¶ 16        On August 16, 2019, plaintiff filed its initial complaint against the Tollway, in which it alleged that it had a protectable interest in its A15 approvals and that those approvals were terminated without due process. Plaintiff alleged damages resulting from "not being able to provide services for [the Tollway]" that were, at that time, incapable of being calculated, but were in excess of $1 million. Plaintiff did not allege any specifics about its protectable interest, merely that it had one.

¶ 17        On September 20, 2019, the Tollway moved to dismiss plaintiff's complaint pursuant to section 2-615 and section 2-619(a)(9) in a combined motion pursuant to section 2-619.1. In its motion to dismiss, the Tollway argued that plaintiff's claim was based on its contracts with Judlau and FH Paschen, yet plaintiff had failed to attach those contracts and so the complaint should have been dismissed for failure to comply with section 2-206 (735 ILCS 5/2-606 (West 2018)), which requires that a copy of the written instrument be attached to the complaint when the complaint contains claims founded on a written instrument. The Tollway further argued that plaintiff's complaint was barred by the governing contracts and that the complaint was barred by section 32 of the Toll Highway Act. 605 ILCS 10/32 (West 2018). Included with the motion to dismiss was an affidavit from Kovacs, who averred that he was employed as the Tollway's chief engineer and was responsible for overseeing all engineering activities. Kovacs averred that he conducted an internal investigation of the fatal incident that led to the revocation of plaintiff's A15 approvals, during which he discovered that plaintiff deviated from the demolition plan without approval from him and that he believes that the incident was

caused, "in whole or in part, by [plaintiff's] unauthorized deviation from the demolition plan." Kovacs averred that it was based upon his investigation that he recommended to the Tollway that plaintiff's A15 subcontractor approvals be revoked.

¶ 18       On January 31, 2020, the trial court entered an order granting the Tollway's motion to dismiss under section 2-615 without prejudice, finding that plaintiff had "failed to attach required documents and failed to state a cause of action against the Tollway on which relief can be granted under Illinois pleading standards." The trial court further found that plaintiff "failed to plead sufficient facts to indicate the terms of the subcontracts that were breached and failed to plead facts to support a cause of action against the Tollway." The trial court cited caselaw that directs courts presented with a section 2-619.1 combined motion to dismiss to first entertain the section 2-615 motion and only entertain the 2-619 motion "after a legally sufficient cause of action has been found." *Johannesen v. Eddins*, 2011 IL App (2d) 110108, ¶ 29. Since the trial court dismissed based on the section 2-615 motion, it did not consider the section 2-619(a)(9) motion. The trial court gave plaintiff leave to file an amended complaint stating a cause of action.

¶ 19                              II. First Amended Complaint

¶ 20       On April 3, 2020, plaintiff filed its first amended complaint. The first amended complaint was largely identical to the original complaint. In its amended complaint, plaintiff claimed again that it had a protectable interest in its A15 approvals and alleged the same damages in excess of $1 million, this time "consisting of not being able to provide services for [the Tollway] and having the contracts referred to herein terminated." Plaintiff attached its two Judlau contracts and its four FH Paschen contracts to its first amended complaint.

¶ 21    On April 22, 2020, the Tollway filed a motion to dismiss plaintiff's first amended complaint pursuant to section 2-615. In its motion, the Tollway argued that although plaintiff had attached the contracts that were missing from the initial complaint, it had failed to cure all other deficiencies in its original complaint. Namely, plaintiff's amended complaint was still based on plaintiff's subcontracts with the Tollway's general contractors and failed to recite relevant provisions of those subcontracts that were allegedly breached. In its motion to dismiss, the Tollway also encouraged the court to consider its previously-submitted motion to dismiss pursuant to section 2-619(a)(9).

¶ 22    On May 29, 2020, plaintiff filed a response to the Tollway's motion to dismiss its first amended complaint. In its response, plaintiff argued that its cause of action was not a contractual one, but rather a cause of action based in the Tollway's violation of plaintiff's due process rights. Plaintiff argued that it had not alleged a breach of contract on the Tollway's part at any time and that its complaint was entirely with regard to violation of its due process rights. Plaintiff argued that the Tollway should have provided it with advance notice of the termination of plaintiff's A15 approvals and the Tollway should have provided it with an opportunity to be heard.

¶ 23    On June 17, 2020, the Tollway filed a reply to plaintiff's response to its motion to dismiss plaintiff's first amended complaint. In its reply, the Tollway argued that plaintiff's assertion that it had a protectable interest in its A15 approvals was a legal conclusion unsupported by any facts. The Tollway further argued that revocation of plaintiff's A15 approvals fell within its discretionary authority and was not judicially reviewable.

¶ 24    On July 31, 2020, the trial court entered an order granting the Tollway's motion to dismiss plaintiff's first amended complaint without prejudice, finding that plaintiff had "failed to set

forth a sufficient basis for its claimed denial of due process by the Tollway." The trial court found that plaintiff's allegation that it had a protectable interest in its A15 approvals was a conclusory statement that was insufficient to sustain a claim of violation of due process. The trial court pointed out additional flaws in plaintiff's first amended complaint:

"Further, the first amended complaint states in paragraph 11 that its A15 status has not been restored, yet does not recite what specific actions have been taken by Plaintiff to have the A15s restored, what actions the Illinois State Toll Highway Authority has taken or not taken to restore status, or what requires the Illinois State Toll Highway Authority to do so. Simply stating that its legal status is unclear does not set forth a right or demonstrate that due process has been denied, and simply stating that there is a denial of due process without factual support is not sufficient to state a cause of action under Illinois pleading standards."

¶ 25　　　The trial court's July 31, 2020, order granted the Tollway's motion to dismiss plaintiff's first amended complaint pursuant to section 2-615, dismissing it without prejudice. The order did not address the Tollway's previous motion to dismiss under section 2-619(a)(9). The order further granted plaintiff a second, final chance to replead.

¶ 26　　　　　　　　　　　　III. Second Amended Complaint

¶ 27　　　On August 24, 2020, plaintiff filed its second amended complaint. Plaintiff's second amended complaint was largely identical to its original and first amended complaints but added mention of correspondence between plaintiff and the Tollway in which plaintiff sought to discuss its A15 status and in which the Tollway refused plaintiff's request to meet regarding its A15 status. Plaintiff further alleged in its second amended complaint that "[t]here may have

been other actions taken by Plaintiff to attempt to obtain restoration of its A15s and other actions or inactions may have been taken by Defendant concerning Plaintiff's A15s."

¶ 28        On September 9, 2020, the Tollway moved to dismiss plaintiff's second amended complaint pursuant to section 2-615. The Tollway argued that plaintiff (1) had failed to cure the defects in its first amended complaint because it still failed to state a cause of action and (2) had failed to allege facts to show that the Tollway abused its discretionary authority by revoking plaintiff's A15 approvals. In its motion, the Tollway requested that should its motion pursuant to section 2-615 be denied, its previous motion pursuant to section 2-619(a)(9) be ruled upon.

¶ 29        It is unclear the dates on which plaintiff's response to the Tollway's September 9, 2020, motion to dismiss and the Tollway's reply to that response were filed, as the response included in the record is dated December 10, 2020, and the reply to that response is dated October 21, 2020. Regardless of the correct date on which it was filed, plaintiff's response argued that when the trial court listed the facts missing from plaintiff's complaint, it used the conjunction "or" rather than "and," thereby indicating that only one of the set of missing facts was necessary to remedy that flaw in the complaint. Plaintiff argued that since it included in its second amended complaint the actions it took to attempt to have its A15 approvals restored and the actions taken or not taken by the Tollway with regard to the same, it had cured that defect in its complaint. Plaintiff further argued that by noting that A15 approvals are necessary to work for the Tollway, that all subcontractors working for the Tollway must have A15 approvals, that a subcontractor cannot continue working on Tollway projects without an A15 approval, and that Plaintiff applied for and acquired A15 approvals for each of the subcontracts it held with Judlau and FH Paschen for Tollway work, it had thereby demonstrated a

12

protectable interest under the due process clause of the United States constitution. Lastly, plaintiff argued that the Tollway's argument that its decisions regarding A15s were within the exercise of its discretionary powers was unavailing because the Tollway had not cited to any authority to demonstrate that the decisions did in fact fall within such discretionary powers. Plaintiff preemptively rebutted an expected argument from the Tollway that the Tollway's statutory authority over "the letting of contracts for the construction of toll highways or any part thereof" included decisions regarding A15 approvals by arguing that plaintiff did not have a contract with the Tollway but instead only subcontracts with the Tollway's general contractors to perform demolition, not construction.

¶ 30    In its reply to plaintiff's response, the Tollway argued that plaintiff had still failed to state a cause of action because it failed to demonstrate that it had a protectable interest in its A15 approvals and, once again, that its decisions regarding the letting of contracts for the construction of toll highways or any part thereof were not judicially reviewable. Since the trial court's second grant of leave to replead was indicated to be final, the Tollway argued that the complaint should be dismissed with prejudice.

¶ 31    On January 14, 2021, the trial court entered an order granting the Tollway's motion to dismiss plaintiff's second amended complaint pursuant to section 2-615 with prejudice. The trial court found that plaintiff "failed to correct the defects in [its] first amended complaint, and [ ] failed to set forth a right or demonstrate that due process has been denied regarding the Tollway's failure to restore [its] A15 Subcontractor Approval." The trial court found that plaintiff's efforts to remedy the defects in its first amended complaint were insufficient and that it had still failed to make the necessary showing to maintain a claim for violation of its

right to due process. The trial court's order did not address the Tollway's previous motion to dismiss under section 2-619(a)(9).

¶ 32     On February 16, 2021, plaintiff timely filed the instant appeal. Although the appeal was filed 32 days after the order dismissing plaintiff's second amended complaint, the delay of two days was due to a weekend and a holiday during which the court was closed, and so the appeal is nonetheless timely.

¶ 33                                         ANALYSIS

¶ 34     On appeal, plaintiff argues first that where the trial court's order dismissing plaintiff's first amended complaint stated that "[plaintiff] does not recite what specific actions have been taken to have the A15s restored, what actions the [Tollway] has taken or not taken to restore status, or what requires the [Tollway] to do so," plaintiff cured the defects in its previous pleading by providing facts about the actions taken or not taken and if plaintiff was required to show what requires the Tollway to restore its A15s, another opportunity to replead should have been granted to allow plaintiff to do so. Second, plaintiff argues that where the trial court's order stated that merely alleging that plaintiff has a protectable interest is conclusory and insufficient to sustain a claim for violation of due process, plaintiff cured that deficiency when it set forth in its second amended complaint the facts that an A15 approval is required to do work on Tollway projects and that plaintiff had sought and received an A15 approval for each of its subcontracts on Tollway projects. Third, plaintiff argues that if its factual pleadings were insufficient, or if it was required to plead facts showing that the Tollway abused its discretionary powers, it should have been given a third opportunity to replead. Fourth, plaintiff argues that the Tollway's argument in its motions to dismiss that its revocation of plaintiff's A15 approvals is within its discretionary powers and therefore unreviewable under the Toll

Highway Act (605 ILCS 10/1 *et seq.* (West 2018)) is unavailing because the Tollway has failed to demonstrate that such a determination is in fact within its discretionary powers. Fifth, plaintiff argued in the response to the Tollway's motion to dismiss plaintiff's second amended complaint that the CPO's order rescinding the plaintiff's suspension constituted a direction to the Tollway to restore plaintiff's A15 approvals, which the Tollway had a duty to follow. Sixth and lastly, plaintiff argues for the first time on appeal that an A15 approval is akin to a license granted by the government and therefore plaintiff was due the same process upon revocation of its approval that a licensee would be due upon revocation of his or her license. We will not examine any potential matters of contract law, as plaintiff explicitly stated in its response to the Tollway's motion to dismiss plaintiff's first amended complaint that its argument was not one based in contract law but instead purely based in due process.

¶ 35                                    I. Standard of Review

¶ 36        The trial court dismissed plaintiff's second amended complaint pursuant to section 2-615 for failure to state a cause of action. A motion to dismiss under section 2-615 of the Code challenges the legal sufficiency of the complaint by alleging defects on its face. *Young v. Bryco Arms*, 213 Ill. 2d 433, 440 (2004); *Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2003). Dismissal pursuant to section 2-615 is proper only if the defect is apparent on the face of plaintiff's complaint. *Young*, 213 Ill. 2d at 440. The question is whether, even assuming that all well-pleaded facts in the complaint are true, the complaint states a legally recognized cause of action. *Wakulich*, 203 Ill. 2d at 228. In making this determination, a court will construe the complaint's allegations in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor. *Young*, 213 Ill. 2d at 441; *Wakulich*, 203 Ill. 2d at 228. An appellate court reviews *de novo* a trial court's order granting a section 2-615 dismissal motion.

*Young*, 213 Ill. 2d at 440. *De novo* review means that we perform the same analysis a trial court would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). "Under the *de novo* standard of review, this court owes no deference to the trial court." *People v. Williams*, 2013 IL App (1st) 111116, ¶ 75 (citing *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 154 (2007)). We may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 37     The Tollway also moved to dismiss plaintiff's complaint pursuant to section 2-619(a)(9). The trial court did not rule on the Tollway's section 2-619(a)(9) motion, however we may affirm on any basis appearing in the record, whether or not the trial court relied on that basis and whether or not the trial court's reasoning was correct. *Khan v. Fur Keeps Animal Rescue, Inc.*, 2021 IL App (1st) 182694, ¶ 25; *Mullins v. Evans*, 2021 IL App (1st) 191962, ¶ 59. "A motion to dismiss, pursuant to section 2-619 of the Code, admits the legal sufficiency of the plaintiffs' complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiffs' claim." *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006); *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006). "[T]he movant is essentially saying ' "Yes, the complaint was legally sufficient, but an affirmative matter exists that defeats the claim." ' " *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 31 (quoting *Winters v. Wangler*, 386 Ill. App. 3d 788, 792 (2008)). Dismissal is permitted based on certain listed "defects" (735 ILCS 5/2-619(a)(1)-(8) (West 2020)) or some "other affirmative matter" (735 ILCS 5/2-619(a)(9) (West 2020)) outside the complaint. *Reynolds*, 2013 IL App (4th) 120139, ¶ 31.

¶ 38    On an appeal from a section 2-619 dismissal, our standard of review is also *de novo*. *Hernandez v. Lifeline Ambulance LLC*, 2020 IL 124610, ¶ 14; *Solaia Technology*, 221 Ill. 2d at 579. *De novo* review means that we perform the same analysis a trial court would perform. *Khan*, 408 Ill. App. 3d at 578. "Under the *de novo* standard of review, this court owes no deference to the trial court." *Williams*, 2013 IL App (1st) 111116, ¶ 75.

¶ 39    In ruling on a section 2-619 motion to dismiss, a court must interpret the pleadings and supporting materials in the light most favorable to the nonmoving party. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367-68 (2003). "[A] court must accept as true all well-pled facts in the plaintiff's complaint and any reasonable inferences that arise from those facts." *Hernandez*, 2020 IL 124610, ¶ 14.

¶ 40    Our supreme court has explicitly disapproved of procedure combining an inquiry into the sufficiency of a complaint with inquiries that admit the sufficiency of the complaint. *Janes v. First Federal Savings & Loan Ass'n of Berwyn*, 57 Ill. 2d 398, 406 (1974). In that case, our supreme court stated that "[w]hen, and only when, a legally sufficient cause of action has been stated should the court have entertained the motions for summary judgment and considered the affidavits filed in support thereof." *Janes*, 57 Ill. 2d at 406. While a section 2-619 motion to dismiss is not a motion for summary judgment, as in *Janes*, such a motion similarly admits the legal sufficiency of the plaintiff's complaint. See *Johannesen*, 2011 IL App (2d) 110108, ¶ 29. In the case at bar, the trial court was careful to decide only the section 2-615 motion to dismiss, not wanting to have the legal sufficiency of this complaint admitted when the complaint did not state a cause of action. However, the matter raised in the section 2-619 motion to dismiss is a question of whether the Tollway's actions are reviewable by the courts at all, which is a matter of jurisdiction and it is this court's duty to independently consider a court's jurisdiction

and dismiss an appeal if jurisdiction is wanting. See *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009). Accordingly, we will consider the arguments raised in the Tollway's section 2-619 motion to dismiss.

¶ 41                                              II. Jurisdiction

¶ 42       The Tollway moved to dismiss plaintiff's original complaint pursuant to section 2-619(a)(9), arguing (1) that plaintiff had no rights against the Tollway and (2) that plaintiff's claim was barred under section 32 of the Tollway Highway Act, as the decision to revoke plaintiff's A15 approvals was a determination made in exercise of the Tollway's discretionary powers. The trial court never ruled on the Tollway's section 2-619(a)(9) motion to dismiss, but the issue presented therein is a jurisdictional one, so we will address it. The Tollway's first argument is moot, as plaintiff later explicitly stated in its response to the Tollway's motion to dismiss plaintiff's first amended complaint that its claim was entirely one based in an alleged due process violation and was not based on its subcontracts. We find the Tollway's second argument, regarding section 32, to be convincing.

¶ 43       For a motion to be properly brought under section 2-619, the motion (1) must be filed "within the time for pleading" and (2) must concern one of nine listed grounds. 735 ILCS 5/2-619(a) (West 2020). In the case at bar, there is no indication that defendants failed to file a timely motion, so we turn to the grounds that defendants assert.

¶ 44       A section 2-619 motion is permitted on only the following grounds:

            "(1) That the court does not have jurisdiction of the subject matter of the action, provided the defect cannot be removed by a transfer of the case to a court having jurisdiction.

(2) That the plaintiff does not have legal capacity to sue or that the defendant does not have legal capacity to be sued.

(3) That there is another action pending between the same parties for the same cause.

(4) That the cause of action is barred by a prior judgment.

(5) That the action was not commenced within the time limited by law.

(6) That the claim set forth in the plaintiff's pleading has been released, satisfied of record, or discharged in bankruptcy.

(7) That the claim asserted is unenforceable under the provisions of the Statute of Frauds.

(8) That the claim asserted against defendant is unenforceable because of his or her minority or other disability.

(9) That the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a) (West 2020).

¶ 45    Subsection (a)(9) permits dismissal when an affirmative matter outside of the pleadings bars the claim. 735 ILCS 5/2-619(a)(9) (West 2020). "Affirmative matter," in this context, "encompasses any defense other than a negation of the essential allegations of the plaintiff's cause of action." (Internal quotation marks omitted.) *Daniels v. Union Pacific R.R. Co.*, 388 Ill. App. 3d 850, 855 (2009).

¶ 46    In the Tollway's motion to dismiss pursuant to section 2-619(a)(9), the Tollway argued that because section 32 bars the review of determinations made by the Tollway in the exercise of its discretionary powers by the courts, and its revocation of plaintiff's A15 approvals was such a determination, that determination should not be subject to review by the courts.

19

Although the Tollway brought this argument pursuant to section 2-619(a)(9), it better fits section 2-619(a)(1), as, if true, the trial court did not have jurisdiction over the matter and transfer to another court would not have removed that defect. Regardless, the Tollway's argument falls within the scope of section 2-619.

¶ 47    Section 32 reads:

"All determinations made by the Authority in the exercise of its discretionary powers, with the approval of the Governor if such approval is expressly required by the provisions of this Act, including without limitation, the location and terminal points of any toll highway or section to be constructed by it, the materials to be used in its construction, the plans and specifications thereof, the tolls to be charged for the use thereof, and the letting of contracts for the construction of toll highways or any part thereof, or the sale of bonds, shall be conclusive and shall not be subject to review by the courts or by any administrative agency of the State." 605 ILCS 10/32 (West 2018).

¶ 48    In *People v. Illinois State Toll Highway Comm'n*, 3 Ill. 2d 218, 223 (1954), our supreme court found that the effectively identical provision applicable to the Toll Highway Commission (the Tollway's predecessor) under section 28 of the State Toll Highway Commission Act (Ill. Rev. Stat. 1953, ch. 121, ¶ 314a53) was constitutional but that "[r]ecourse to the courts is not denied where bad faith, fraud, corruption, manifest oppression or a clear abuse of discretion enters in the commission's determinations; the presence of any of these conditions will give ready access to the courts." This court recognized the applicability of that supreme court holding to the Illinois State Toll Highway Authority Act (Ill. Rev. Stat. 1981, ch. 121, ¶ 1-101 *et seq.*) in *Hammerman v. Illinois State Toll Highway Authority*, 148 Ill. App. 3d 259 (1986). Neither at trial, nor on appeal, does plaintiff allege that the revocation of their A15s constituted

bad faith, fraud, corruption, manifest oppression, or clear abuse of discretion. Accordingly, if the Tollway's decision to revoke plaintiff's A15 approvals was within the exercise of its discretionary powers, that decision is not reviewable by the courts.

¶ 49 Plaintiff argued at trial and renews its argument on appeal that it is the Tollway's burden to prove that the acts at issue in the case at bar are within its discretionary powers, but it has not cited any authority to support that position. Plaintiff further argued, in its response to the Tollway's motion to dismiss its second amended complaint, and renews its argument on appeal, that, should the Tollway cite to the portion of section 32 that explicitly includes in its discretionary powers "the letting of contracts for the construction of toll highways or any part thereof," such an argument is unavailing because "[plaintiff] did not have a contract with [the Tollway] for construction of tollways or any part thereof. [Plaintiff] had a contract with various subcontractors for the demolition of bridges."

¶ 50 It is clear that plaintiff's intended second argument was that (1) its contracts were with Judlau and FH Paschen, not with the Tollway, and (2) its contracts were for bridge demolition, not for construction of toll highways or any part thereof. While both of these assertions are true, neither is sufficient to establish that the Tollway's actions were not within the exercise of its discretionary powers. As to the first argument, the fact that plaintiff's contracts were not with the Tollway renders the specific language in section 32 regarding the letting of contracts irrelevant, as the letting of contracts refers specifically to the awarding of contracts, and the Tollway awarded no contract to the plaintiff. However, section 8(b) of the Toll Highway Act establishes that the Tollway has the power "[t]o enter into all contracts and agreements necessary or incidental to the performance of its powers under this Act." 605 ILCS 10/8(b) (West 2018).

21

¶ 51    In this instance, the Tollway entered into contracts with FH Paschen and Judlau. Judlau's subcontract with plaintiff includes a provision conditioning the entire subcontract on several conditions, one of which is "the approval of the subcontractor by the Owner and A/E, where such approval is required." Judlau's contract with the Tollway, in turn, stated: "All contractors must be approved in writing before they commence any work." Both parties assert that such a requirement applies to all subcontractors seeking to work for Tollway general contractors. Accordingly, the Tollway's decision to revoke plaintiff's A15 approvals falls within the Tollway's discretionary powers and is not subject to review by the courts.

¶ 52    Plaintiff's argument that because section 32 refers to the letting of contracts for the construction of toll highways or any part thereof, but its contract was for demolition work, the Tollway's determination was not within the exercise of its discretionary powers, similarly fails. Section 8 (605 ILCS 10/8 (West 2018)) allows the Tollway to enter into all contracts and agreements necessary or incidental to the performance of its powers under the Act, so plaintiff's argument is unavailing. It is unquestionable that the demolition of existing construction in a place where new tollway construction is to take place is necessary or, at a minimum, incidental to the exercise of the Tollway's powers to build and maintain tollways.

¶ 53    Plaintiff argues that the Tollway failed to sustain its burden to prove that the revocation of plaintiff's A15 approvals was within its discretionary powers. The Tollway argues in return that it was plaintiff's burden to prove that the Tollway's affirmative defense that the act fell within its discretionary powers and was therefore unreviewable by the courts was, in fact, unavailing. Our supreme court has held that "[w]here a defendant presents affidavits or other evidentiary matter supporting the asserted [affirmative] defense, the burden shifts to the plaintiff to establish that the defense is unfounded or requires the resolution of an essential

22

element of material fact before it is proven." *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626, ¶ 16. In the case at bar, the Tollway argued that the Tollway revoked plaintiff's A15 approvals "in accordance with its broad, discretionary authority pursuant to Section 10/32" and included with the motion to dismiss an affidavit from its chief engineer, Kovacs, averring that he ordered the revocation of plaintiff's A15 approvals after conducting an investigation into the fatal incident that occurred April 5, 2016, and found that it did not follow its filed plan in the demolition process and caused numerous OSHA violations. As such, the burden was shifted to plaintiff to show that the Tollway's defense is unfounded. Plaintiff asserted in response both at trial and on appeal that the Tollway is required to cite an authority that proves that revocation of plaintiff's A15 approvals was within the Tollway's discretionary authority but does not cite any authority itself for this assertion.

¶ 54    In the case at bar, plaintiff failed to carry its burden to establish that the Tollway's defense was unfounded. In addition, plaintiff has not shown any evidence submitted to the Tollway that they were not responsible for the incident that killed one worker and injured three others. The evidence submitted shows that plaintiff deviated from their submitted and approved plan for the demolition and caused numerous OSHA violations. Our supreme court has said only that "[i]f, after considering the pleadings and affidavits, the trial judge finds that the plaintiff has failed to carry the shifted burden of going forward, the motion *may* be granted and the cause of action dismissed." (Emphasis added.) *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993). However, in this case, the question at hand is one of jurisdiction and plaintiff's failure to demonstrate jurisdiction is fatal, and as a result, the section 2-619 motion to dismiss should have been granted.

¶ 55    Since section 32 states that the trial court did not have jurisdiction to review the Tollway's actions in exercise of its discretionary powers, we have no jurisdiction to review the trial court's order. Accordingly, we vacate the order entered by the circuit court of Cook County on January 14, 2021, and dismiss this appeal in its entirety for lack of jurisdiction.

¶ 56    Appeal dismissed.

2022 IL App (1st) 210158

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-L-9102; the Hon. Daniel J. Kubasiak, Judge, presiding. |
| **Attorneys for Appellant:** | Arnold H. Landis, of Law Offices of Arnold H. Landis, P.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General of Chicago (Jane Elinor Notz, Solicitor General, and Evan Siegel, Assistant Attorney General, of counsel), for appellee. |