2026 IL App (1st) 232519

No. 1-23-2519

First Division
March 16, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| VICTORIA HERNANDEZ, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 19 L 14374 |
| ZITA RUIZ, ISAIS GARCIA, and ARTURO RODARTE | ) ) ) | Honorable Scott D. McKenna, |
| Defendants | ) ) | Judge, presiding. |
| (Zita Ruiz and Isais Garcia, Defendants-Appellees). | ) ) | |

_____

JUSTICE COBBS delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment.

**OPINION**

¶ 1    This case arises out of plaintiff-appellant Victoria Hernandez's premises liability complaint against defendants Zita Ruiz, Isais Garcia, and Arturo Rodarte, alleging negligence for a "slip and fall" on January 20, 2018, on property owned by defendants. On December 31, 2019, plaintiff filed a civil complaint in the circuit court of Cook County. On that same date, summonses directed to

defendant Rodarte, at 1463 W. Superior Street, Chicago, and to defendants Ruiz and Garcia[1] at 1405 Maplewood Avenue, 1st Floor, Chicago, were issued. From December 2019 to September 2022, no proper service on defendants was achieved. Ultimately, service on defendants was made by posting at the 1405 N. Maplewood Avenue address on September 2, 2022.

¶ 2    On May 24, 2023, defendants filed a motion to dismiss the complaint pursuant to section 2-619(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2022)) and Illinois Supreme Court Rule 103(b) (eff. July 1, 2007), arguing that plaintiff failed to exercise due diligence in effecting service. Following briefing by the parties and hearing on the motion, on August 22, 2023, the trial court dismissed plaintiff's complaint with prejudice. Plaintiff filed a motion for reconsideration on September 21, 2023, which the trial court denied on November 28, 2023.

¶ 3    On December 28, 2023, plaintiff timely filed her notice of appeal. For the reasons that follow, we affirm.

¶ 4                              I. BACKGROUND

¶ 5                              The Complaint

¶ 6    On December 31, 2019, plaintiff, through counsel, filed a three count complaint in the circuit court of Cook County in which she alleged, generally, that "[o]n or about January 20, 2018, defendants owned, operated, managed, maintained, controlled, and/or leased the premises located

---

[1]On August 25, 2022, an order of default was entered against defendant Rodarte. However, on April 17, 2023, an appearance was entered on Rodarte's behalf. During the August 2023 hearing on defendants' motion to dismiss, the court noted the default and, further, that even though the default had not been vacated, an appearance had been filed on Rodarte's behalf. October 2, 2023, Judge Toya Harvey entered an order voluntarily dismissing defendant Rodarte and granting plaintiff leave to refile. The trial court's Illinois Supreme Court Rule 103(b) (eff. July 1, 2007) dismissal order was as to Ruiz and Garcia only; Rodarte is not a party to this appeal.

at 1463 W. Superior Street in the City of Chicago, County of Cook, and State of Illinois." As to all named defendants, the complaint alleged that they had a duty to exercise ordinary care in the maintenance of the premises in order that it would be reasonably safe for the persons lawfully thereon. On January 20, 2018, plaintiff was legally on the premises as a tenant and slipped and fell on ice upon reaching the sidewalk outside her apartment.[2] The complaint further alleged that a disconnected gutter had directed water to the area where she slipped and fell. Additionally. The complaint alleged that defendants knew or should have known of the ice on the premises and that the ice "represented a dangerous condition to those lawfully on the premises."

¶ 7     Each count in the complaint named each defendant separately and alleged that each had breached their duty of care in that each carelessly and negligently owned, operated, maintained, managed, inspected, and/or controlled the premises; that each failed to (1) take precautions to remove and/or prevent the dangerous conditions, (2) post proper warnings of the dangerous conditions that existed, and (3) properly inspect the premises; and that each carelessly and negligently allowed the ice on the premises to exist and the disconnected gutter to exist in a defective condition.

¶ 8     The complaint alleged that "as a direct and proximate result of one or more" of defendants' negligent acts plaintiff sustained, *inter alia*, severe and permanent injuries, lost wages, "great pain and anguish, both in mind and body," and large sums of money for medical care. Plaintiff sought from each named defendant as recompense "an amount greater than $50,000 plus costs of this lawsuit."

¶ 9                              Service of Process

---

[2]An action for damages for an injury to the person must be commenced within two years next after the cause of action accrued. 735 ILCS 5/13-202 (West 2018).

¶ 10    At issue in this case is whether plaintiff exercised due diligence in effectuating service of process on defendants. To best demonstrate, we set forth in detail, plaintiff's efforts from the first attempt at service, in December 2019, to the date on which service was actually effected in September 2022.

¶ 11    On December 13, 2019, the date on which plaintiff filed her complaint, summonses directed to defendants at "1405 N. Maplewood Avenue, First Floor, Chicago," were issued. A Cook County sheriff's affidavit reflected an attempt at service on defendants on January 17, 2020, but indicated "no contact."

¶ 12    On February 27, 2020, during a case management proceeding, the court granted plaintiff leave to issue alias summonses by March 12, 2020, and to appoint a special prosecutor. Alias summonses directed to defendants at 1405 N. Maplewood Avenue, Apartment 1, Chicago, were filed on March 10, 2020. The special process server's affidavit, filed April 29, 2020, reflected seven attempts at service, between March 16, 2020, and April 2, 2020 , by knocking on the front window of the building or the back door, but no service had been made. The process server averred that he spoke with a tenant entering the building who confirmed that the "subject" resided there.

¶ 13    On April 30, 2020, plaintiff filed a motion for appointment of a special prosecutor. Relevant here, in the motion plaintiff argued that, due to the COVID-19 pandemic, the Cook County sheriff's staff was diminished and that, in order to effectuate service on defendants, appointment of a special process server was necessary. On May 14, 2020, the court granted plaintiff's motion and on May 15, 2020, plaintiff filed alias summonses directed at defendants at 1405 N. Maplewood Avenue, Apartment 1, Chicago. The special process server's affidavit, filed on August 18, 2020, reflected seven attempts at service, between May 23, 2020, and June 6, 2020, by variously knocking on the front door and the first-floor window, but no service had been made.

¶ 14    On October 21, 2020, plaintiff again filed a motion seeking leave to serve alias summonses, *instanter*, directed to defendants at the 1405 N. Maplewood Avenue address.[3] She again asserted in the motion that appointment of a special process server was necessary to effect service due to the COVID-19 pandemic. The record reflects that a summons for defendants was filed on October 28, 2020.

¶ 15    On February 1, 2021, the court granted plaintiff's January 28, 2021, motion for leave to issue alias summonses *instanter*, directed to defendants. There is no indication in the record that any summonses issued pursuant to the court's February 1 order granting leave.

¶ 16    On April 21, 2021, the court granted plaintiff's April 20, 2021, motion for leave to issue alias summonses *instanter*, directed to defendants. There is no indication in the record that any summonses issued pursuant to the court's April 21 order granting leave.

¶ 17    On April 28, 2021, ATG LegalServe performed a skip trace on defendants Ruiz and Garcia. The resultant report reflected 1405 N. Maplewood Avenue, Unit 1, Chicago as defendants' most likely address.

¶ 18    On June 7, 2021, plaintiff filed a motion seeking leave to issue alias summonses, *instanter*, directed at defendants at both 2117 S. Ashland Avenue, Chicago and 1405 N. Maplewood Avenue, Unit 1, Chicago. On June 10, 2021, alias summonses were filed. The filed stamped July 14, 2021, affidavit of the special process server indicated "no contact" for defendants at the Ashland Avenue address. The file stamped August 11, 2021, affidavit reflected seven attempts at service, between

---

[3]Included in the record is a motion filed on October 26, 2020, which appears to be the same in substance as the one filed on October 21, 2020. Alias summonses naming Rodarte, Ruiz, and Garcia were filed on October 28, 2020. A file stamped order entered on October 29, 2020, granted leave to serve Rodarte via alias summons. On November 17, 2020, the court entered an amended order naming only Ruiz and Garcia.

June 15, 2021, and June 30, 2021, at the Maplewood Avenue address "by knocking at the front window." However, no service had been made, even though on one occasion "lights were on inside of the unit."

¶ 19　　On February 4, 2022, during a status hearing, plaintiff was granted leave to issue alias summonses directed to defendants and for the appointment of a special process server. There is no indication in the record that any summonses issued pursuant to the court's February 4 order.

¶ 20　　On March 8, 2022, also at a status hearing, plaintiff was again granted leave to issue alias summonses directed to defendants. There is no indication in the record that any summonses issued pursuant to the court's March 8 order.

¶ 21　　On April 7, 2022, at the next status hearing, plaintiff was again granted leave to issue alias summonses directed to defendants and for the appointment of a special process server. Shortley thereafter, on April 21, 2022, plaintiff motioned and was granted leave to serve defendants by special order of court. Affidavits filed by plaintiff's special process server indicated that the complaint and summonses had been posted on the main door of the building at 1405 N. Maplewood Avenue, Unit 1, Chicago, on April 29, 2022.

¶ 22　　At the June 24, 2022, case management conference, counsel for defendants was present in court and was given until July 14, 2022, to file an appearance or otherwise plead.

¶ 23　　On July 14, 2022, on behalf of defendants, counsel filed an appearance as well as a motion to quash service. In the motion, defendants cited statutory deficiencies in plaintiff's April 21, 2022, motion to serve by special order of the court. On August 9, 2022, the court granted defendants' motion to quash and also granted plaintiff leave to "perfect service on [defendants] pursuant to the relevant statutes and rules."

¶ 24    On August 18, 2022, plaintiff filed a motion to serve defendants by special order of court, attaching to the motion an affidavit of due diligence. On August 25, 2022, the court granted plaintiff's motion. Subsequently, affidavits filed on behalf of plaintiff's special process server indicated that service had been effected on September 2, 2022, by "posting to the front door of the residence" at 1405 N. Maplewood Avenue.

¶ 25                                    Motion to Dismiss

¶ 26    On May 24, 2023, defendants filed a motion to dismiss pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2022)) and Illinois Supreme Court Rule 103(b) (eff. July 1, 2007). In the motion, defendants argued that plaintiff took over 32 months to effectuate service on them and, from May 2020 through April 2022, only once did plaintiff issue alias summonses, that being in June 2021. Defendants argued that the address at which they were ultimately served is the exact same address at which plaintiff issued the original summons months earlier and that their addresses were known to plaintiff at the beginning of this litigation. Defendants further argued that nothing in the record indicates that defendants had actual knowledge of the pendency of the litigation. During the 23-month period in which only one summons was issued, plaintiff had been granted leave to issue alias summonses "at least seven times." Defendants further argued that this case stems from an incident that allegedly occurred on January 20, 2018, and by the time of the September 2, 2022 service, more than four years later, they were greatly prejudiced by the delay. Based on plaintiff's failure to exercise reasonable diligence in effecting service, defendants argued that the matter should be dismissed with prejudice as the statute of limitations had passed.

¶ 27    In her August 9, 2023, response, plaintiff argued that it took "27 months" to effectuate service because the sheriff and multiple process servers were unable to locate and serve the

defendants, despite multiple attempts. She asserted that the fact that most of the attempts were at the building where service was first attempted and ultimately effected "strongly suggests" that defendants were aware of the lawsuit and were intentionally evading the process servers. Plaintiff additionally argued that defendants, through their insurers, were immediately notified that the action was brought, as a copy of the complaint was sent to the defendants' insurer immediately after suit was filed. Further, plaintiff responded, the "Covid pandemic and lockdown" also made service more difficult for many reasons, including that the court system was operating at a substantially diminished level, people were sheltering in place and much more difficult to serve, the sheriff was barely attempting service, and "what had previously been routine procedures became exceedingly cumbersome." Finally, plaintiff argued, defendants were not prejudiced by the delay, and they were "anything but diligent in responding to the suit," thereby making them guilty of laches. Thus, plaintiff urged the court's denial of defendants' motion to dismiss.

¶ 28    On August 16, 2023, defendants filed their reply in support of their motion to dismiss.[4]

¶ 29    On August 22, 2023, the court heard argument on defendants' motion. Following the hearing, the court commented, "obviously you have an extraordinary long period of time here, and so it's a 33-months total." Apparently referencing requirements for dismissal pursuant to Rule 103(b), the court stated, "[i]t's discretionary you got to go through all of those factors." The court additionally noted that there was no evidence that the defendants were being evasive; they were at the same address as when they were served. None of the returns stated that the defendants were at home and "not answering the door, that they saw shadows, that they saw them scampering about

---

[4]We note that in the reply in support of their motion to dismiss, counsel for defendants assert that the appearance on their behalf was filed on "July 14, 2020, when a motion to quash service was brought." The circuit court clerk's case summary reflects July 14, 2022, as the date on which counsel's appearance was filed. As well, the file stamped date on the Motion to Quash is July 14, 2022.

when the door was knocked," which is what you usually see in this situation. "They're eventually served 33 months later at the very same address that they've always had." With respect to COVID-19, the court stated that if it gave plaintiff the period of time between "December of '19 and August of '20, if I excuse that period of time you're still looking at an approximate 26-month delay." The court noted, however, that by the fall of 2020, everything was getting back to functioning on a semi-regular basis. The court acknowledged that even though defendants are not obligated to show prejudice, that the prejudice in this case is enormous as the defense is in no position to be able "to say or be able to put any discovery together to be able to rebut the case." Thus, the court granted the motion to dismiss with respect to "these two defendants." The court entered its written ruling on that same date.

¶ 30    On September 21, 2023, plaintiff filed a motion for reconsideration. On October 30, 2023, defendants filed a response in which they argued for denial of the motion, asserting that the motion for reconsideration "makes the same argument[s] as were contained in plaintiff's response to the motion to dismiss." Defendants' response additionally noted that plaintiff's motion for reconsideration failed to provide the court with a copy of the transcript from the hearing on the motion to dismiss or to identify with which portions of the court's ruling it disagreed.

¶ 31    On November 28, 2023, the trial court denied plaintiff's motion for reconsideration. This appeal followed.

¶ 32                                    II. ANALYSIS

¶ 33                                  Standard of Review

¶ 34    We observe that in defendants' motion to dismiss, they assert as bases for dismissal both section 2-619(a)(9) of the Code as well as Rule 103(b). However, here on appeal, in their brief defendants assert that the correct standard of review is abuse of discretion. In her opening brief,

plaintiff, we presume based on defendants' reference to section 2-619 in their motion to dismiss, asserts that the standard of review of the trial court's dismissal is *de novo*.

¶ 35    Dismissals pursuant to section 2-619 are subject to *de novo* review. *Omega Demolition Corp. v. Illinois State Toll Highway Authority*, 2022 IL App (1st) 210158, ¶ 38. We note that here, the trial court's dismissal of plaintiff's complaint was pursuant to Rule 103(b). In *Segal v. Sacco*, 136 Ill. 2d 282, 286 (1990), our supreme court held that dismissal under Rule 103(b) is within the sound discretion of the circuit court. Accordingly, we review the trial court's dismissal for abuse of discretion, which we may find only when its decision is "arbitrary, fanciful, or unreasonable, or where no reasonable person would adopt the court's view." *Evitts v. DaimlerChrysler Motors Corp.*, 359 Ill. App. 3d 504, 513 (2005).

¶ 36                                                    Arguments

¶ 37    Plaintiff contends that the trial court erred (1) in granting defendants' motion to dismiss by wrongly concluding that she failed to exercise due diligence in serving defendants, (2) in dismissing her claims without considering the impact of the COVID-19 pandemic on her ability to effectuate service, and (3) in denying her motion for reconsideration by failing to consider the totality of the circumstances surrounding her diligent attempts at service.

¶ 38    Before proceeding, we set forth the relevant portions of Rule 103(b) and its governing principles. Our supreme court adopted Rule 103(b) " 'to effectuate its historical and constitutional mandate to render justice fairly and promptly.' " *Womick v. Jackson County Nursing Home*, 137 Ill. 2d 371, 377 (1990) (quoting *O'Connell v. St. Francis Hospital*, 112 Ill. 2d 273, 282 (1986)). At its core, Rule 103(b) is intended to promote the expeditious management of litigation by vesting in the trial court wide discretion to dismiss a complaint when service is not effected with reasonable diligence. *Karpiel v. LaSalle National Bank of Chicago*, 119 Ill. App. 2d 157, 160-61 (1970). The

rule has as its primary purpose the avoidance of intentional delay of service of summons upon a defendant for an indefinite period of time in order to circumvent the applicable statute of limitations. *Id.* at 160. Although the rule does not delineate a specific time period within which the defendant must be served, the plaintiff must exercise reasonable diligence in doing so. *Segal*, 136 Ill. 2d at 285-86.

¶ 39    In relevant part, the rule provides that:

"If the failure to exercise reasonable diligence to obtain service on a defendant occurs after the expiration of the applicable statute of limitations, the dismissal shall be with prejudice as to that defendant only and shall not bar any claim against any other party based on vicarious liability for that dismissed defendants' conduct." Ill. S. Ct. R. 103(b) (eff. July 1, 2007).

¶ 40    Upon filing a motion to dismiss pursuant to Rule 103(b), the defendant must initially make a *prima facie* showing that the plaintiff failed to exercise reasonable diligence in effectuating service after filing the complaint. *Kole v. Brubaker*, 325 Ill. App. 3d 944, 949 (2001). It has been held that that a delay of four to five months between the filing of the complaint and subsequent service is sufficient to establish a *prima facie* showing of the absence of due diligence. See *Wilder Chiropractic, Inc. v. State Farm Fire & Casualty Co.*, 2014 IL App (2d) 130781, ¶ 82; *Ollins v. Karl*, 2022 IL App (1st) 220150, ¶ 42 (plaintiff's delay, five months after filing the complaint, in sending defendant a request for waiver of service considered *prima facie* evidence that plaintiff did not exercise due diligence). The period of time between filing a complaint and the date of service necessary to make a *prima facie* case and shift the burden to the plaintiff is incapable of precise definition. 3 Richard A. Michael, Illinois Practice, Civil Procedure Before Trial § 8.7 (2d

ed. 2011). "Among the shorter periods that have been held to warrant dismissal are delays of 5½, eight, nine, and 10 months." *Id.*

¶ 41    Once the defendant establishes that the time between the filing of the complaint and the date of service suggests a lack of diligence, the burden then shifts to the plaintiff to provide a satisfactory explanation for the delay. *Kole*, 325 Ill. App. 3d at 949-50. In the absence of a satisfactory explanation, the trial court is justified in granting a Rule 103(b) dismissal. *Id.* at 951.

¶ 42    The rule envisages an objective standard and whether the delay was intentional is not determinative. *Mular v. Ingram*, 2015 IL App (1st) 142439, ¶ 21; see *Long v. Elborno*, 397 Ill. App. 3d 982, 994 (2010) (the reasonable diligence requirement in Rule 103(b) is not based on a subjective test of the plaintiff's intent, but rather upon the objective test of reasonable diligence in effectuating service).

¶ 43    Courts are not lacking in guidance in deciding whether a plaintiff has exercised due diligence in effecting service on a defendant. In *Segal*, 136 Ill. 2d 282, our supreme court set out seven factors to be considered when deciding a motion to dismiss pursuant to Rule 103(b). The court instructs that in making its determination on a Rule 103(b) motion, the trial court may consider: (1) the length of time used to effectuate service; (2) the activities of the plaintiff; (3) the plaintiff's knowledge of the defendants' location; (4) the ease with which the defendants' whereabouts could have been ascertained; (5) the defendants' actual knowledge of pendency of the action as a result of ineffective service; (6) special circumstances affecting the plaintiff's efforts; and (7) actual service on the defendant. *Id.* at 287; *Case v. Galesburg Cottage Hospital*, 227 Ill. 2d 207, 212-13 (2007).

¶ 44    Courts recognize that dismissal with prejudice is a harsh penalty that may only be justified when the delay in service of process is of a length that denies a defendant a fair opportunity to

investigate the circumstances upon which liability against the defendant is grounded. *Segal*, 136 Ill. 2d at 288. Where the errors causing the delay in service are relatively minor or inadvertent, courts have been reluctant to grant dismissal with prejudice. See *id.* For that reason, the rule does not dictate a particular time limit within which a defendant must be served but requires instead that a court consider the passage of time in relationship to all of the other facts and circumstances in the case. *Case*, 227 Ill. 2d at 213.

¶ 45    Plaintiff first contends that the trial court erred in concluding that she did not exercise due diligence in serving defendants. In support, plaintiff first argues that from the time the lawsuit was filed in December 2019, summonses were promptly placed with the Cook County sheriff, however, the sheriff's attempts were not successful. She points to the supplemental record as documentation of the multiple alias summonses issued and the attempts at service which were unsuccessful. She maintains that it took "twenty-seven" months to effectuate service largely because multiple attempts were made and multiple process servers attempted to locate and to serve defendants. She argues that that the fact that multiple attempts at service were made at the very address where service was ultimately achieved suggests that defendants were aware of the lawsuit and were intentionally evading service.

¶ 46    Defendants respond that plaintiff fails to provide a satisfactory explanation for the "32-month delay" in effectuating service. They argue that despite plaintiff's contention otherwise, her activities were very limited. Defendants point to the fact that during the period of time it took for plaintiff to serve them, there were two very lengthy periods with no activity by plaintiff. They point to May 2020 through April 2022, asserting that plaintiff issued only one alias summons in

that period of time.[5] Citing *Lopez v. Wallenberg*, 2024 IL App (1st) 230861-U, as persuasive authority, defendants argue that although plaintiff was granted leave to issue several alias summonses, there were large gaps of inactivity.

¶ 47    Even by a conservative count, from the time the complaint was filed, it took plaintiff far more than two years to effectuate service on the defendants. Even so, plaintiff notes to this court that her diligence in attempting service is apparent from her several motions to issue alias summonses. We can agree that plaintiff filed more than a few written motions in which she sought and was granted leave to issue alias summonses, which by our count, was no fewer than five. Unexplained are the number of times in which leave was sought, leave was granted, but nothing in the record indicates that summonses issued. We recount them here. The record reflects that after the special process server's June 20, 2020, attempt, plaintiff filed written motions for leave to file alias summonses in October 2020, January 2021, April 2021, June 2021, and April 2022. Although each of plaintiff's motions were granted, the record reflects that summonses in response were filed only in October 2020, June 2021 and April 2022. Further, the record reflects that at the February, March, and April 2022 status hearings, the court entered orders to allow alias summonses. There is, however, nothing in the record to indicate that any summonses were filed in response to those orders either. Additionally, the record reflects more than a few instances when there was no activity initiated by plaintiff in the case at all, first from July 2020 to September 2020, then from December 2020 to January 2021, in March 2021, and most substantially, from July 2021 through January 2022. Plaintiff offers no explanation to this court for the several gaps in time.

---

[5]The record reflects that during the period from May 2020 to April 2022, four alias summonses were filed: May 15, 2020, October 28, 2020, June 10, 2021, and April 25, 2022.

¶ 48 Further, nothing in the affidavits of service, filed by either the sheriff's office or by plaintiff's special process servers, supports a finding that defendants were attempting to evade service. As the trial judge indicated in the dismissal order, no process server indicated that they observed evasive movement at the Maplewood residence. Notably, upon being served in April 2022, purportedly by special order of the court, defendants promptly filed their appearance and a responsive pleading.

¶ 49 Plaintiff next argues that defendants were aware of the pending lawsuit as her attorney had given notice to defendants' insurer. She asserts that due to defendants' relationship with their insurer, defendants may be said to have had constructive notice. Defendants give plaintiff's constructive notice argument only short shrift. They note that there is no evidence in the record that defendants had notice; notice to an insurance company is not notice to a defendant; and further, nothing in the record indicates that defendants' insurer had notice of the lawsuit.

¶ 50 Initially we note, and as plaintiff correctly asserts, attorney Langendorf's affidavit, which is included in the record, avers that his office mailed to defendants' insurer a copy of the complaint immediately after it was filed. Additionally, Langendorf averred that his office called defendants' insurer immediately after the service process was effected through "positing" and informed them that defendants had been served.

¶ 51 However, we need not dwell on whether defendants had constructive notice, or even whether there is sufficient evidence in the record to support claims of actual notice through defendants' insurer. Until the April 29, 2022, posting, we cannot say with any assurance that defendants had any awareness of the litigation, and service was not effected until September 2022, long after the statute of limitations on plaintiff's claim had run.

¶ 52    We find *Womick*, 137 Ill. 2d 371, although factually distinguishable, instructive on the actual notice factor. Briefly, in *Womick*, the plaintiff brought a wrongful death claim against the defendant, Jackson County Nursing Home. *Id.* at 374. Nearly nine months after the statute of limitations had expired, service was placed and the defendant was served with summons the next day. *Id.* The defendant filed a motion to dismiss pursuant to Rule 103(b) on the ground that the plaintiff failed to exercise reasonable diligence in effectuating service. *Id.* While the defendants' motion to dismiss was pending, the plaintiff filed a motion for voluntary dismissal of the suit, which was ultimately granted. *Id.* Subsequently, the plaintiff's motion for voluntary dismissal was vacated and the defendants' motion for dismissal pursuant to Rule 103(b) was allowed. *Id.* at 375.

¶ 53    The plaintiff appealed, contending that the trial court abused its discretion in granting the motion to dismiss because the defendant nursing home had actual notice of the lawsuit. *Id.* at 375-76. In support, the plaintiff relied on an article in a local newspaper in which defendant nursing home's administrator had been questioned. *Id.* at 376. Also, the plaintiff pointed out that as the defendant was a municipal entity, pursuant to governing law, the defendant had been given notice of his claim even before suit was filed. *Id.*

¶ 54    In rejecting the plaintiff's arguments, the supreme court noted that the appellate court had recognized that notice or knowledge of the lawsuit along with a lack of prejudice to the defendant will not necessarily preclude a dismissal under Rule 103(b). *Id.* at 377. The court opined that although actual notice or knowledge of the pendency of a suit or the lack of prejudice to the defendant are significant in that they may affect the judge's determination as to whether the plaintiff was diligent, they are but two factors to be considered by the court in making the determination. *Id.* The court, in finding that the trial court had not abused its discretion, stated that all of the factors are to be considered with a view toward fulfilling the constitutional mandate of

rendering justice fairly and promptly. *Id.* As the court did in *Womick*, we reject plaintiff's constructive notice claim here as satisfying Illinois's due diligence requirements.

¶ 55 Citing *Verploegh v. Gagliano*, 396 Ill. App. 3d 1041 (2009), plaintiff argues that much like the plaintiff in that case, there was little information available to her regarding the identity and location of defendants, creating much uncertainty about their location.

¶ 56 The most obvious distinguishing factor between *Verploegh* and the case at bar is that in *Verploegh*, the defendant was served seven months after the plaintiff filed her complaint. *Id.* at 1045. Here, give or take a few days, 32 months elapsed from the time plaintiff filed her complaint in December 2019 to the date notice was posted in September 2022.

¶ 57 Beyond that glaring distinction, we find plaintiff's argument to be wholly disingenuous. Plaintiff alleges in her own complaint that she was a tenant on the property owned by defendants, which presumably explains how, in the first instance, she knew an address for issuance of the very first summonses that were directed to defendants at 1405 N. Maplewood Avenue, the very same address at which service was ultimately achieved. Further, plaintiff's special process server averred in his April 30, 2020, affidavit that on March 16, 2020, a tenant at the 1405 Maplewood Avenue address confirmed that address as defendants' residence. Additionally, the report generated from the special process server's skip trace in April 2021, confirmed defendants' address as 1405 Maplewood Avenue. Thus, plaintiff can make no credible claim that she lacked knowledge either of the identity of defendants or their whereabouts.

¶ 58 Plaintiff next contends that the trial court erred in dismissing her claims without considering the impact of the COVID-19 pandemic as an extraordinary circumstance affecting her ability to effectuate service. She argues that she faced extraordinary and unforeseen challenges due to COVID-19. To address those challenges, she employed alternative service strategies, including

skip traces and investigations through ATG LegalServe. She maintains that, notwithstanding the challenges resulting from the pandemic, she diligently continued service attempts "between June 15, 2021, and June 30, 2021," without success.

¶ 59 Defendants respond that there were no special circumstances that affected plaintiff's ability to perfect service of process. They assert that the COVID-19 pandemic was not a special circumstance that should excuse her lack of diligence. In support, defendants invite our attention to our opinion in *Ollins*, 2022 IL App (1st) 220150, and as persuasive authority, *Walker v. Demos*, 2022 IL App (1st) 210152-U, and *Art Group, LLC v. McCain*, 2023 IL App (1st) 220550-U. They note that in *Ollins*, *Walker*, and *Art Group, LLC*, the plaintiffs in all three cases made the same argument regarding COVID-19 that plaintiff presses here, and in all three cases, the argument was rejected. Further, they argue that it was plaintiff's own lack of diligence that caused delay in service in this case. They assert that this case involves two periods of inactivity in service of process over a 32-month period. After June 10, 2021, the next time plaintiff issued summonses directed to defendants was not until April 25, 2022, 10 months later.

¶ 60 Although plaintiff presents as a separate contention, the existence of "extraordinary circumstances," affecting service, we address it as one of *Segal*'s seven factors and as a component in our consideration of the totality of the circumstances affecting service. That said, we note again that in response to COVID-19, it was plaintiff who motioned the court for the appointment of a special process server, expressly arguing to the court its necessity to effectuate service through the private agency due to the diminished availability of the sheriff's office. From that time forward, and in every written motion seeking leave to file alias summonses, plaintiff additionally sought appointment of a special process server. And, in response to every motion, written or otherwise, the court allowed it. Thus, it seems to us disingenuous of plaintiff to now assert the impact of

COVID-19 on the sheriff's office's resources as a factor contributing to the delay in effecting service.

¶ 61     Moreover, in ruling on defendants' motion to dismiss, the trial court addressed plaintiff's claims regarding the impact of the COVID-19 pandemic, noting that by the fall of 2020, everything was "getting back to normal." We take judicial notice of Cook County Circuit Court General Administrative Order 2020-02 (July 29, 2020), which ordered the resumption of all circuit court operations effective July 6, 2020. See *In re Application of the County Treasurer of Cook County*, 2024 IL App (1st) 220670, ¶ 86 (information on government website and in public records are sufficiently reliable such that judicial notice may be taken of them). In the fall of 2020, in October, plaintiff sought and was subsequently granted leave to issue alias summonses and the appointment of a special process server.

¶ 62     Finally, accepting plaintiff's assertion that she was actively engaged in attempting service in June 2021, yet unexplained is the total absence of activity from July 2021 up until February 2022, when the court, to no avail, next granted leave to file alias summonses.

¶ 63     Returning briefly to *Ollins*, a panel of justices on this court rejected the plaintiff's contention that the sheriff's office's decision to temporarily prioritize service in "essential" cases excused the plaintiff's delay in effecting service. *Ollins*, 2022 IL App (1st) 220150, ¶ 43. We held that the sheriff's unavailability had no effect on the plaintiff's ability to achieve service by other means. *Id.* ¶¶ 43-44.

¶ 64     In this case, formal service of process was first attempted by the sheriff's office in January 2020. Subsequently, and on plaintiff's motions, service was permitted by special process servers. Thus, we reject plaintiff's COVID-19-based extraordinary circumstance argument.

¶ 65    In sum, in considering the first and second *Segal* factors, a substantial period of time elapsed between the plaintiff filed her complaint in December 2019 and when service was actually achieved, in September 2022. Beginning in June 2020, plaintiff's efforts ebbed and flowed, peppered with periods of inactivity and unfulfilled court orders. With respect to the third and fourth *Segal* factors, given plaintiff and defendants were in a landlord-tenant relationship, that fact, coupled with confirmation of residency from a tenant and the skip trace report, there can be no credible claim that defendants' whereabouts were either unknown or not easily ascertained. Regarding factor five, "actual knowledge," nothing in the record imputes notice to the defendants through their insurer, and even accepting awareness, there was not notice. To find otherwise would run afoul of our supreme court's holding in *Womick*. With respect to plaintiff's "extraordinary circumstances" claim, *Segal*'s sixth factor, plaintiff herself, in arguing and consistently utilizing the services of special process servers defeated her claim regarding the COVID-19 pandemic as an impediment to service. Finally, with respect to actual service on the defendant, *Segal*'s seventh factor, we note that service in this case was successfully achieved in September 2022, more than two years after plaintiff filed her complaint and at the very same address as when service was first attempted in December 2019.

¶ 66    Based on our review of the record and considering the totality of the circumstances, we find that the trial court did not abuse its discretion in granting defendants' Rule 103(b) motion to dismiss.

¶ 67    Plaintiff's final contention on appeal is that the trial court erred in denying her "[w]ell-[f]ounded" motion to reconsider. Plaintiff argues that the court's denial of her motion for reconsideration failed to accurately reflect her "unwavering diligence and steadfast commitment to pursuing service even under pandemic duress." She maintains that the court's refusal to

reconsider overlooked her comprehensive and documented attempts to serve defendants and her extensive "reconnaissance measures, supplementary searches, and adaptive strategies, in the face of unprecedented circumstances." Plaintiff asserts that her "calculated steps in transitioning service methods, harnessing investigative tools, and consulting expert providers showcases the substantial measures taken to uphold due diligence as required by Rule 103(b)."

¶ 68    Defendants respond that plaintiff's motion for reconsideration was no more than a rehashing of the same evidence that the circuit court had before it when deciding the motion to dismiss. They argue that plaintiff failed to provide any newly discovered evidence to the court, made no contentions of error in the court's application of the law and did not argue that there had been changes in existing law since the motion to dismiss was granted.

¶ 69    We agree with defendants' characterization of plaintiff's motion for reconsideration. As defendants correctly note, the purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence that was not available at the time of hearing, errors in the court's previous application of existing law, or changes in existing law. *Liceaga v. Baez*, 2019 IL App (1st) 181170, ¶ 25. Plaintiff's motion fails to satisfy any of those criteria. Thus, we find no error in the court's denial of her motion for reconsideration.

¶ 70                                    III. CONCLUSION

¶ 71    For all of the foregoing reasons, we affirm the judgment of the circuit court.

¶ 72    Affirmed.

*Hernandez v. Ruiz*, 2026 IL App (1st) 232519

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-L-14374; the Hon. Scott D. McKenna, Judge, presiding. |
| **Attorneys for Appellant:** | Kenneth A. Fishman, of Law Office of Kenneth A. Fishman, P.C., and Robert A. Langendorf, of Robert A. Langendorf, PC, both of Chicago, for appellant. |
| **Attorneys for Appellee:** | Ellen J. O'Rourke and Michael D. Gallo, of Michael D. Gallo & Associates, of Chicago, for appellees. |