2023 IL App (1st) 220151
No. 1-22-0151
Opinion filed June 12, 2023

First Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| CARYN ASH, Individually and on Behalf of All Others Similarly Situated, | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | |
| v. | No. 2019 CH-13116 |
| PSP DISTRIBUTION, LLC; PSP FRANCHISING, LLC; and PSP GROUP, LLC, | The Honorable Cecilia A. Horan, Judge, presiding. |
| Defendants-Appellees. | |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Pucinski and Coghlan concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendants PSP Distribution, LLC, PSP Franchising, LLC, and PSP Group, LLC operate

retail stores and the website "Pet Supplies Plus," selling pet products nationwide. PSP markets

a private-label pet food line called "Redford Naturals." Caryn Ash bought 15 cans of Redford

Naturals wet cat food, which listed "ground flaxseed" as one of its ingredients. ("Wet" pet food

has a high moisture content, principally water, compared to "dry" pet foods. Pet Food Inst., *4*

*Common    Questions    About    Pet    Food*,    Pet    Food    Inst.    Blog,

https://www.petfoodinstitute.org/blog/4-common-questions-about-pet-food (last visited May

31, 2023) [https://perma.cc/95AC-93G6].)

¶ 2    Ash's second amended complaint alleges a violation of the Consumer Fraud and Deceptive Business Practices Act on PSP's failure to disclose on the label that the cans contained whole flaxseed along with ground flaxseed. See 815 ILCS 505/2 (West 2018). Additionally, Ash alleges claims of common-law fraud and unjust enrichment. The trial court granted PSP's section 2-615 motion to dismiss, finding Ash failed to allege facts showing that the omission of whole flaxseed as an ingredient was material. 735 ILCS 5/2-615 (West 2020). Ash's unjust enrichment count also failed because it is a remedy that must be tethered to a properly pleaded cause of action.

¶ 3    Drawing all reasonable inferences in Ash's favor, as we must, we agree with the trial court and affirm.

¶ 4                                    Background

¶ 5    Flaxseed contains heart-healthy Omega-3 fatty acids and is a nutritional supplement. Flaxseed comes in three forms: whole, ground, and oil.

¶ 6    Caryn Ash purchased 15 cans of Redford Naturals cat food from a Pet Supplies Plus retail store for $1.18 each. The website and the label listed "ground flaxseed" as one of several ingredients. Ash alleged that whole flaxseed appeared on the top of and throughout the cans.

¶ 7    Ash sued for fraudulent misrepresentation under the Consumer Fraud Act, common-law fraud, and unjust enrichment. After the court dismissed her initial complaint without prejudice, Ash filed a first amended complaint, which the trial court also dismissed, again without prejudice. The trial court concluded that Ash "failed to allege that Defendants concealed, misrepresented, or omitted known material facts, and thus the fraud claims fail as a matter of law."

¶ 8                            Second Amended Complaint

¶ 9    Ash's second amended complaint asserted "several whole flaxseeds readily visible at the top of these cans of Redford Naturals, and more whole flaxseeds mixed throughout the wet cat

food." According to this version of the complaint, the presence of whole flaxseed "was significant, and was more than just a stray flaxseed or two that could have easily been 'picked out' by Plaintiff."

¶ 10    The major alteration from the first to the second amended complaint concerned a section about "pet humanization," a theory that pet owners treat pets like their children and willingly pay a higher price for "premium" products that ostensibly provide better ingredients and nutritional value. Allegedly, the presence of whole flaxseed comprises a material fact in the purchasing decision and makes the product "completely undesirable to consumers" "[b]ecause consumers (such as Plaintiff and members of the Class) are unwilling to buy cat food that contains any amount of whole flaxseed." *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 505 (1996) ("A material fact exists where a buyer would have acted differently knowing the information ***.").

¶ 11    In addition, Ash alleged that "cat food purveyors" know that disclosing the presence of whole flaxseed in their products would make their products "worthless," as consumers would not buy cat food with whole flaxseed. Ash complained to the company in an e-mail about the presence of whole flaxseed. PSP responded, "they cannot ensure that every flaxseed is ground during the manufacturing process."

¶ 12    Ash added, "it is unclear" from the labels and the Pet Supplies Plus website "if these varieties of Redford Naturals contain whole flaxseed *instead of* ground flaxseed, or whether the presence of ground flaxseed is *in addition to* the presence of whole flaxseed." The second complaint claimed PSP failed to disclose and actively concealed that all its varieties of Redford Naturals contain whole flaxseed.

¶ 13    Again, PSP moved to dismiss. The trial court granted a section 2-615 motion to dismiss (735 ILCS 5/2-615 (West 2020)) with prejudice, concluding that the fraud-based claims lacked

facts supporting "the presence of whole flaxseed in canned cat food is material to an average consumer's purchasing decision."

¶ 14    The dismissal order, citing *Visvardis* v. *Ferleger, P.C.*, 375 Ill. App. 3d 719, 724 (2007), states that under a section 2-615 motion to dismiss, the court accepts as true all well-pleaded facts and reasonable inferences that may be drawn, but the court may give no credence to conclusions of law or conclusory allegations unsupported by specific facts. The trial court declined to "accept as true [Ash's] conclusory allegations" relating to unidentified studies on the benefits and detriments of ground and whole flaxseed to animals, including cats. Finally, the trial court held that the dismissal of the fraud counts doomed the unjust enrichment count.

¶ 15                                    Standard of Review

¶ 16    We review *de novo* orders granting a section 2-615 dismissal. *Bjork v. O'Meara*, 2013 IL 114044, ¶ 21.

¶ 17                                        Analysis

¶ 18    A section 2-615 motion to dismiss challenges the complaint's legal sufficiency. 735 ILCS 5/2-615 (West 2020); *Bjork*, 2013 IL 114044, ¶ 21. When ruling on a motion under section 2-615, the court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded facts and reasonable inferences as true. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. Dismissal follows where no set of facts can be proved to entitle the plaintiff to relief. *Lagen v. Balcor Co.*, 274 Ill. App. 3d 11, 16 (1995).

¶ 19    Illinois is a fact pleading jurisdiction. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429-430 (2006). Although the complaint need not include evidence, it must allege facts sufficient to bring a claim within a legally recognized cause of action. *Id.* The trial court will not admit conclusory allegations or conclusions of law not supported by specific facts. *Crossroads Ford*

*Truck Sales, Inc. v. Sterling Truck Corp.*, 406 Ill. App. 3d 325, 336 (2010); see *Small v. Sussman*, 306 Ill. App. 3d 639, 646 (1999) (conclusory allegations cannot substitute for well-pleaded facts).

¶ 20   Ash pleaded both statutory and common-law fraud.

¶ 21                     Common-Law Fraud and Consumer Fraud Act

¶ 22   To state a cause of action for common law fraud, the plaintiff pleads (i) a false statement of material fact, (ii) which the party making the statement knew or believed to be false, (iii) with the intention to induce the plaintiff to act (iv) and that the plaintiff reasonably relied on the false statement, (v) resulting in damages to the plaintiff. *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 706-07 (2002); *Lagen*, 274 Ill. App. 3d at 17. Fraud claims must be pleaded with sufficient specificity, particularity, and certainty to apprise the defendant of the grounds for the claim. See *Illinois Non-Profit Risk Management Ass'n v. Human Service Center of Southern Metro-East*, 378 Ill. App. 3d 713, 722 (2008). This sets a high standard of specificity for claims of common-law fraud. *Hirsch v. Optima, Inc.*, 397 Ill. App. 3d 102, 116 (2009).

¶ 23   The Consumer Fraud Act protects "consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626, ¶ 20 (citing *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 416-17 (2002)). Courts liberally construe the Consumer Fraud Act to effectuate its purposes. *Robinson*, 201 Ill. 2d at 417 (citing *Cripe v. Leiter*, 184 Ill. 2d 185, 191 (1998)). Under the Consumer Fraud Act, the plaintiff must allege (i) the defendant engaged in a deceptive act or practice, (ii) intending that the plaintiff rely on the deception or practice, (iii) which occurs in the course of conduct involving trade or commerce, (iv) causing actual damage to the plaintiff, (v) proximately caused by the deception. *McIntosh*, 2019 IL 123626, ¶ 21; 815 ILCS 510/1 *et seq.* (West 2018). The Consumer Fraud Act does not require actual reliance.

*Siegel v. Levy Organization Development Co.*, 153 Ill. 2d 534, 543 (1992) (trial court improperly entered summary judgment because material issues of fact remained). An omission is considered material when a reasonable consumer would have acted differently had the consumer known the omitted fact. *DOD Technologies v. Mesirow Insurance Services, Inc.*, 381 Ill. App. 3d 1042, 1052 (2008) (citing *Mackinac v. Arcadia National Life Insurance Co.*, 271 Ill. App. 3d 138, 141 (1995)).

¶ 24        The Consumer Fraud Act expands consumers' rights beyond those of the common law and provides broader protection. *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 68 (1994). We have observed, "Plaintiff's right to recovery is unaffected by her alleged failure to show an intent to deceive because 'a violation of the Consumer Fraud Act may be based on an innocent or negligent misrepresentation as well as one that is intentional.' " *Rubin v. Marshall Field & Co.*, 232 Ill. App. 3d 522, 533 (1992) (quoting *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Development Co.*, 197 Ill. App. 3d 948, 953 (1990)).

¶ 25        The Consumer Fraud Act defines deceptive acts or practices as " 'including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact *** in the conduct of any trade or commerce.' " *Phillips v. DePaul University*, 2014 IL App (1st) 122817, ¶ 33 (quoting 815 ILCS 505/2 (West 2012)).

¶ 26        "Intent" under the Consumer Fraud Act means that the defendant intends for the plaintiff to rely on the deception as opposed to the defendant's intent to deceive. *Carl Sandburg Village Condominium Ass'n No. 1*, 197 Ill. App. 3d at 953. Put another way, the misrepresentation or omission may be innocent if it was intended to induce reliance. *Mackinac*, 271 Ill. App. 3d at 142.

¶ 27        Common-law fraud differs from fraud under the Consumer Fraud Act in that common-law fraud requires pleading actual reliance. *Zinser v. Rose*, 245 Ill. App. 3d 881, 888 (1993) (under the Consumer Fraud Act, plaintiffs need not show actual reliance). Comparing the two causes of action, the *Siegel* court concluded, "so long as the alleged deception occurred in a course of conduct involving trade or commerce, facts satisfying a claim for common law fraud will necessarily satisfy a claim under the Act." *Siegel*, 153 Ill. 2d at 543; see *Connick*, 174 Ill. 2d at 501 (complaint alleging consumer fraud must be pleaded with same particularity as required for common-law fraud).

¶ 28                                              Materiality

¶ 29        Ash contends materiality is the sole issue, citing *Thompson v. IFA, Inc.*, 181 Ill. App. 3d 293 (1989). She asserts materiality presents a question of fact in the context of the information at issue: How do consumers behave and make a buying decision for Redford Naturals' canned cat food, and how do they perceive representations about the product. See *id.* at 299. Ash relies on cases where materiality raises a question of fact. See *Hanson-Suminski v. Rohrman Midwest Motors, Inc.*, 386 Ill. App. 3d 585, 593 (2008) (affirming for plaintiff because "trier of fact could find by a preponderance of the evidence that" omissions material); *Napcor Corp. v. JP Morgan Chase Bank, NA*, 406 Ill. App. 3d 146, 154 (2010) ("trier of fact could have concluded that plaintiff would have acted differently had it known" roof's true condition); *Lidecker v. Kendall College*, 194 Ill. App. 3d 309, 316 (1990) ("Materiality can only be defined in the context of the transaction between the parties.").

¶ 30        Three factors encompass a false statement of material fact: (i) a misrepresentation, (ii) involving a fact (iii) that is material. *Miller v. William Chevrolet/GEO, Inc.*, 326 Ill. App. 3d 642, 649 (2001) (summary judgment granted for defendants on common-law fraud and statutory

fraudulent misrepresentation claims). A representation of fact is material if a reasonable person could be expected to rely on a statement or omission in deciding to enter into a transaction. *Id.* That is to say, materiality typically affects buyer decision-making. *Id.*

¶ 31    Courts view the elements of a Consumer Fraud Act claim under an objective standard, measuring the materiality of the consumer's decision by what a reasonable consumer would regard as important in making a decision. *Connick*, 174 Ill. 2d at 505 (reasonable person standard— whether omission "concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase"); see *Cirone-Shadow v. Union Nissan of Waukegan*, 955 F. Supp. 938, 944 (N.D. Ill. 1997) ("The standard for materiality under the [Consumer Fraud Act] is an objective standard."). So we ask what a reasonable consumer of a can of cat food would consider consequential in making a purchase.

¶ 32    We hold that, even under the expanded protection of the Consumer Fraud Act, the second amended complaint fails to support a claim of materiality.

¶ 33    The second amended complaint alleges that identifying "ground flaxseed" as an ingredient implies only "ground flaxseed" in the product. But, an omission is not actionable as fraud if it gives rise to "an incomplete" as opposed to an affirmatively "false impression." See *Phillips*, 2014 Il App 1st 122817. In *Phillips*, the plaintiffs alleged that DePaul University committed a deceptive act or practice by failing to inform them of the percentages of graduates employed in nonlegal and part-time positions. *Id.* ¶ 40. The *Phillips* court stated, "[W]hile the information published by DePaul *could certainly have been more specific* about the types of employment included in the reported percentage of employed graduates, plaintiffs have identified no affirmative misrepresentation by DePaul of those figures." (Emphasis added.) *Id.*

¶ 34    Similarly, the omission here is not material under the reasonable consumer standard. "Ground flaxseed" does not imply the product includes no other form of flaxseed, as Ash asserts. Indeed, references in advertising and ingredient labels do not imply the ingredient is used exclusively. Affirmative statements about the purity or amount of ingredients have regularly not been found misleading. See *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 476 (7th Cir. 2020) ("100% Grated Parmesan Cheese" label); *Kennedy v. Mondelēz Global LLC*, No. 19-CV-302-ENV-SJB, 2020 WL 4006197, at *4 (E.D.N.Y. July 10, 2020) (graham crackers advertised as "made with real honey" not misleading even though other sweeteners and additives used); *Sarr v. BEF Foods, Inc.*, No. 18-cv-6409, 2020 WL 729883, at *4 (E.D.N.Y. Feb. 13, 2020) (label stating mashed potatoes made with "real butter" does not imply absence of other fats); *Henderson v. Gruma Corp.*, No. CV 10-04173, 2011 WL 1362188, at *12 (C.D. Cal. Apr. 11, 2011) (crackers labeled as made "with Garden Vegetables" not misleading as matter of law because "labeling statement does not claim a specific amount of vegetables in the product, but rather speaks to their presence in the product" (emphasis omitted)). Notably, Ash does not allege the PSP claimed the cat food was free of whole flaxseed.

¶ 35    Courts interpret "plausibility" by considering "the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). Considering these factors, the claims have not crossed into "plausible." Ash's claim that whole flaxseed is detrimental to cats is a conclusion unsupported by any facts pleaded. Nor has Ash adequately alleged that the disclosure of one form of an ingredient must exclude the presence of another form.

¶ 36 Ash's objection to whole flaxseed as an ingredient involves human digestion, not cats. Ash asserts flaxseed has value as a nutritional cat food supplement because it treats human ailments. But the second amended complaint does not allege facts about human or cat digestion of whole flaxseed to indicate the reasonableness of attributing human ingestion of whole flaxseed to cats. Moreover, the presence of "ground flaxseed" does not guarantee the absence of "whole flaxseed." Under the reasonable consumer standard, the court looks "holistically" at the disclosure to determine whether it was misleading. The plaintiff must plausibly allege that the statement was "likely to deceive a reasonable consumer." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972, 977-78 (7th Cir. 2020).

¶ 37 Accordingly, we hold as a matter of law that no factfinder could find a reasonable consumer would consider the disclosure of "ground flaxseed" to imply the absence of other forms of flaxseed.

¶ 38 Moreover, Ash alleges that the phenomenon known as "pet humanization" (pet owners' tendency to anthropomorphize their pets) leads to a willingness to spend more money on pet products perceived as superior in quality. The second amended complaint asserts, "since pet owners view their pets as human (or substantially similar to humans because they are mammals), pet owners generally believe that "if it is good/bad for me, it must *also* be good/bad for my pet. If that was not true, I would certainly know." Not only is the syllogism self-evidently faulty, but it also has no empirical support in the complaint other than the conclusory allegation that Ash "would certainly know" about what is good or bad for humans and pet cats.

¶ 39 Besides, pet humanization is a dubious basis for determining whether reasonable consumers would consider the presence of whole flaxseed material in their purchasing decisions. Whether or not a "phenomenon," factual allegations must support the critical element of materiality.

¶ 40                    State and Federal Regulations

¶ 41        Finally, Ash cites a federal statute and regulation and two Illinois regulations as requiring "a full and complete ingredient list." But nothing in what she cites requires distinguishing between different forms of an ingredient. As PSP argues, the federal statute and regulation indicate that pet food labels need not list ingredients with particular specificity. See 21 C.F.R. § 501.4(a) (1995); 21 U.S.C. § 343(i)(2) (2018). Section 501.4(a) of title 21 of the Code of Federal Regulations clarifies that ingredients "shall be listed by common or usual name," nothing about flaxseed or an obligation to disclose that a ground ingredient may appear in whole form. 21 C.F.R. § 501.4(a) (1995). As for Ash's reference to section 200.25 of title 8 of the Illinois Administrative Code (8 Ill. Adm. Code § 200.25(a)(6)(A) (1992)), how this section supports Ash's position is indiscernible since it appears in subpart A, "Commercial Feed (Except Pet Food)." Regarding Ash's mention of section 200.160 of title 8 (8 Ill. Adm. Code § 200.160(e) (1992)), contained in subpart B, "Pet Food," section 200.160(e) states, "No reference to the quality, nature, form, or other attribute of an ingredient shall be made unless such designation is accurate." Ash does not explain the relevancy of the section nor the inaccuracy of PSP's listing of ground flaxseed.

¶ 42                          Unjust Enrichment Claim

¶ 43        Unjust enrichment is not a separate cause of action and must be dismissed when the underlying claims, here consumer and common-law fraud, are deficient. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739-40 (7th Cir. 2019) (unjust enrichment claim "tied to the fate of the claim under the Consumer Fraud Act"). Ash's claim for unjust enrichment fails, as it hinged on the survival of the claims of fraud, which have been dismissed.

¶ 44        Affirmed.

---

*Ash v. PSP Distribution, LLC*, 2023 IL App (1st) 220151

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-CH-13116; the Hon. Cecilia A. Horan, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Thomas A. Zimmerman Jr., Sharon A. Harris, Matthew C. De Re, and Jeffrey D. Blake, of Zimmerman Law Offices, P.C., of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | William B. Berndt, of Honigman LLP, of Chicago, for appellees. |

---