2026 IL App (1st) 242062
No. 1-24-2062

SIXTH DIVISION
May 22, 2026

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| CARL ARCANGEL, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) | No. 23 CH 9957 |
| YARDI SYSTEMS, INC., | ) ) | Honorable |
| Defendant-Appellee. | ) ) ) | Cecilia Horan, Judge, presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Justice Hyman and Justice Gamrath concurred in the judgment and opinion.

**OPINION**

¶ 1　Carl Arcangel, individually and on behalf of others similarly situated, brought an action against Yardi Systems, Inc. (Yardi), alleging that Yardi violated section 2 of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/2 (West 2024)) by charging a 3.5% service fee to tenants who made rent payments through Yardi's online payment platform using a credit card. Plaintiff brought a corresponding unjust enrichment count for amounts collected and wrongfully retained by defendant from the credit

card transaction fees. The trial court dismissed, finding that plaintiff could not allege unfair or deceptive conduct where plaintiff chose to pay by credit card when the 3.5% service fee had been disclosed prior to the transaction and where plaintiff had a fee-free alternative.

¶ 2     We affirm. We first hold that a consumer fraud claim cannot be solely premised upon an alleged violation of a contract between third parties. We further find that plaintiff has failed to sufficiently allege unfair or deceptive conduct to state a claim under the Consumer Fraud Act.

¶ 3     Our ruling today is shaped by the form of the pleadings that came before us on review. Plaintiff brought his claim against the fee processor, but not the landlord, and framed his claim around the Visa rules, a third-party contract. Our ruling today stands for the proposition that Consumer Fraud Act claims may not be brought to enforce the provisions of a third-party contract. We do not foreclose the possibility that a Consumer Fraud Act claim could be brought against a payment processor, or a landlord, under similar circumstances. Rather, we hold that such a claim would need to allege consumer unfairness or deception outside of the bounds of a third-party contract.

¶ 4                                 I. BACKGROUND

¶ 5     Defendant operates an online payment platform (Rentcafe) through which tenants may pay their rent. Tenants may pay (a) via debit or credit card, incurring a 3.5% fee to do so; (b) via automated clearing house (ACH), incurring a flat $10 convenience fee; or (c) by enrolling in auto-pay using their bank account information, an option that incurs no additional fee. Each option and its corresponding fees are disclosed to tenants before they make payments through defendant's platform.

2

¶ 6 On or around July 3, 2023, plaintiff made a rent payment through defendant's platform using a Visa credit card. By paying by credit card, plaintiff incurred a 3.5% surcharge on his rent payment.

¶ 7 Plaintiff's Consumer Fraud Act claim is premised on Yardi's alleged violation of Visa's core rules and Visa product and service rules (Visa Rules). Plaintiff alleges that Yardi and Visa entered into a merchant agreement that required Yardi's compliance with the Visa Rules in order for Yardi to accept payments using Visa credit cards. The Visa Rules authorize merchants to assess a surcharge on Visa credit card transactions up to a maximum of 3%. Thus, Plaintiff maintains that Yardi's assessment of a 3.5% fee on credit transactions violated the Visa Rules.

¶ 8 Plaintiff maintains that Yardi's violation of the 3% cap on surcharges was both deceptive and unfair within the meaning of the Consumer Fraud Act. First, plaintiff alleges that Yardi acted deceptively where it implicitly represented that it is authorized to charge the 3.5% surcharge despite the 3% cap in the Visa Rules. Although Yardi disclosed that payment by card would involve a 3.5% surcharge, it made no reference to the Visa Rules or their 3% cap on surcharges. Second, plaintiff summarily alleges that the surcharges were unfair and oppressive because consumers were substantially injured when they were charged amounts beyond what the Visa Rules authorized. In the briefs, plaintiff argues that the surcharge is unfair and oppressive because cash-poor consumers may lack the ability to opt into the fee-free autopay option and thus may be forced to pay an "unauthorized" 3.5% surcharge.

¶ 9 In March 2024, defendant moved to dismiss pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2024)), arguing that plaintiff's complaint failed to state a claim under the Consumer Fraud Act as a matter of law and consequently that plaintiff's unjust enrichment claim failed. In brief, defendant argued that (1) the 3.5% surcharge was disclosed

and the nondisclosure of the Visa Rules does not constitute "deceptive conduct," (2) the surcharge was not "unfair" where the payment platform disclosed an alternative, fee-free option by which plaintiff could have paid his rent, and (3) plaintiff may not bring a Consumer Fraud Act claim based solely upon Yardi's alleged breach of contract with a third party (Visa).

¶ 10    The trial court dismissed the consumer fraud claim with prejudice, finding, as a matter of law, that plaintiff could not allege that defendant acted unfairly or deceptively where the fee was disclosed in advance of the transaction and where plaintiff could have avoided paying the fee by opting to pay using a fee-free option. For the same reasons, the court found that plaintiff could not maintain an unjust enrichment claim. The trial court further noted that the alleged violation of the Visa Rules was "immaterial" to its decision to dismiss.

¶ 11    This appeal followed.

¶ 12                                    II. ANALYSIS

¶ 13    On appeal, plaintiff argues that the trial court erred in finding that his Consumer Fraud Act and unjust enrichment claims failed as a matter of law.

¶ 14    A motion to dismiss under section 2-615 of the Code of Civil Procedure challenges the legal sufficiency of the pleadings. *Omega Demolition Corp. v. Illinois State Toll Highway Authority*, 2022 IL App (1st) 210158, ¶ 36. A section 2-615 motion asks whether, assuming all well-pleaded facts in the complaint are true and drawing all reasonable inferences in the plaintiff's favor, the complaint states a legally recognized cause of action. *Id.*

¶ 15    "[R]eview of a trial court's dismissal of a complaint pursuant to section 2-615 of the Code is *de novo*." *Hulsh v. Hulsh*, 2025 IL 130931, ¶ 13. "We may affirm on any basis appearing in the record, whether or not the trial court relied on that basis and whether or not the trial court's reasoning was correct." *Jackson v. Hehner*, 2021 IL App (1st) 192411, ¶ 27.

¶ 16      The Consumer Fraud Act "protect[s] consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626, ¶ 20. The Act declares unlawful

> "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact *** in the conduct of any trade or commerce." 815 ILCS 505/2 (West 2024).

¶ 17      "Under the Consumer Fraud Act, the plaintiff must allege (i) the defendant engaged in a deceptive act or practice, (ii) intending that the plaintiff rely on the deception or practice, (iii) which occurs in the course of conduct involving trade or commerce, (iv) causing actual damage to the plaintiff, (v) proximately caused by the deception." *Ash v. PSP Distribution, LLC*, 2023 IL App (1st) 220151, ¶ 23. Unlike common-law fraud, plaintiffs need not show actual reliance under the Consumer Fraud Act. *Id.* ¶ 27.

¶ 18      In determining whether a practice is unfair, courts consider factors including "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417-18 (2002). Not all three criteria need to be satisfied for a court to find that a practice is unfair; instead, a court may consider the extent to which one or more factors is met. *Id.* at 418-19.

¶ 19        A Consumer Fraud Act claim must be pled with the same particularity and specificity as that required under common law fraud. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (1996).

¶ 20                    A. Plaintiff Cannot Premise Consumer Fraud Claim on an Alleged Breach of a Third-Party Contract

¶ 21        Plaintiff's consumer fraud claim fails because it relies solely on the alleged violation of a third-party contract. Both wrongs asserted under the Consumer Fraud Act—deceptive conduct and unfairness—boil down to a breach of contract: Yardi's alleged violation of the Visa Rules. The arguments that Yardi's conduct was deceptive or unfair rely on the assumption that the breach *itself* was injurious to the consumer. However, plaintiff offers little to no explanation as to how Yardi's imposition of a 3.5% surcharge was unfair or deceptive outside of it not being authorized under Yardi's third-party contract with Visa.

¶ 22        With respect to the deceptive conduct charge, plaintiff concedes that the surcharge was disclosed prior to the transaction. Plaintiff therefore structures the deception claim around defendant's failure to disclose that *the surcharges were unauthorized* under the Visa Rules. In other words, plaintiff asserts that defendant acted deceptively by not disclosing that the surcharges issued would breach its agreement with Visa.

¶ 23        With respect to unfairness, plaintiff takes for granted that the breach of the Visa Rules is unfair to consumers. Plaintiff does not hazard an argument that the fees were excessive on their own or otherwise contrary to law; he only asserts that the fees exceeded the rate permitted

under the Visa Rules.[1] As will be addressed below, plaintiff's other unfairness argument, that the surcharges were oppressive because certain consumers would not be able to opt for the fee-free option, also derive from the premise that the fees were unauthorized or inherently unfair.

¶ 24    Each arm of plaintiff's consumer fraud claim is thus premised on a purported breach of contract. In essence, plaintiff has brought a breach of contract claim in the guise of a statutory Consumer Fraud Act claim.

¶ 25    While Illinois courts have not addressed whether breaches of third-party contracts are actionable under the Consumer Fraud Act, it is well recognized under that "[a] breach of contractual promise, without more, is not actionable under the Consumer Fraud Act." *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 169 (2005); see also *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 233 (1995); *Golembiewski v. Hallberg Insurance Agency, Inc.*, 262 Ill. App. 3d 1082, 1093 (1994). "[T]he Consumer Fraud Act was not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy." *Zankle v. Queen Anne Landscaping*, 311 Ill. App. 3d 308, 312 (2000).

¶ 26    We do not believe that it makes any difference that this matter involves a third-party contract instead of a direct contract between plaintiff and defendant. The principle that a breach of contract, in itself, cannot sustain a cause of action under the Consumer Fraud Act applies with equal force to third-party contracts. Certain federal courts have also reached this conclusion. In *Brockland v. Roundy's Illinois, LLC*, the Northern District of Illinois ruled that a breach of the Visa Rules by defendant grocery stores did not, on its own, give rise to a

---

[1] We do not presume the 3.5% fees are inherently unfair as transaction fees in the absence of any argument to that effect and where plaintiff acknowledges that other credit card companies, such as Mastercard, allow up to a 4% surcharge. See Compl. ¶ 11.

Consumer Fraud Act claim. No. 21-cv-5332, 2022 WL 17082542, at *2 (N.D. Ill. Nov. 18, 2022) ("[P]laintiff does not adequately explain how the absence of a law precludes defendant from charging [cash-back] fees. Therefore, this is fundamentally a question about whether defendant breached its contract with Visa *** which is not actionable under the [Consumer Fraud Act].").

¶ 27    Plaintiff submits that *Brockland* was wrongly decided and that the principle that a breach of contract will not give rise to a Consumer Fraud Act claim does not apply where a plaintiff lacks contractual remedies. The principle tamps down on "redundant" statutory remedies where the litigant has relief governed by a contract or where the litigant could pursue a common-law breach of contract claim. See, *e.g.*, *Avery*, 216 Ill. 2d at 169 ("It is settled that the Consumer Fraud Act was not intended to apply to every contract dispute or to supplement every breach of contract claim ***." (Internal quotation marks omitted.)); see also *Golembiewski*, 262 Ill. App. 3d at 1093; *Zankle*, 311 Ill. App. 3d at 312. Because plaintiff lacks a contractual remedy for defendant's breach of the Visa Rules, plaintiff believes that he should be permitted to bring his claim under the Consumer Fraud Act.[2]

¶ 28    We do not agree. Whereas it is true that the principle prevents a plaintiff from bringing a Consumer Fraud Act claim where he has an action for breach of contract, we do not believe that the Consumer Fraud Act provides a statutory cause of action for a contractual breach that a litigant could not pursue in a common-law breach of contract action. Just because plaintiff

---

[2] We note that defendant asks us to consider a provision of the Visa Rules that disclaims the conferral of rights, privileges, or claims under the Rules to third parties. Defendant suggests that we may consider this provision because plaintiff incorporated it by including, and relying upon, a hyperlink to the Rules in his complaint. The contract itself, however, is not appended to the complaint as an exhibit. We decline to determine whether the hyperlink incorporated the contract as an exhibit that may be considered on a section 2-615 motion to dismiss. We note, however, that both parties agree that plaintiff is not a party to the contract and cannot sue for breach of it.

cannot bring a breach of contract does not mean that he may seek to vindicate contractual rights or obligations under the Consumer Fraud Act. Instead, plaintiff's inability to pursue the claim *as a breach of contract* calls into question plaintiff's right to seek relief for those breaches at all.

¶ 29     The pleadings place plaintiff in a bind. If plaintiff were able to pursue the claim as a breach of contract, *e.g.*, as an intended third-party beneficiary, then the Consumer Fraud Act claim would fail because plaintiff could pursue contractual remedies. Plaintiff does not allege consumers are intended third-party beneficiaries of any agreement between Yardi and Visa, and plaintiff's argument implicitly concedes that they are not. Indeed, plaintiff's argument that he may bring a Consumer Fraud Act claim is premised on his inability to bring a breach of contract claim. On the other hand, if plaintiff lacks a contractual remedy—if he lacks enforceable rights under the contract—then plaintiff fails to explain how he derives an actionable injury based solely on the breach of that contract. Third-party, incidental beneficiaries "have no contractual rights or standing to enforce a contract's terms." *Harleysville Insurance Co. v. Mohr Architecture, Inc.*, 2021 IL App (1st) 192427, ¶ 31; see also *Martis v. Grinnell Mutual Reinsurance Co.*, 388 Ill. App. 3d 1017, 1024 (2009) (finding plaintiff was not a third-party beneficiary of a contract, so he had "no right to enforce it"). Plaintiff's action assumes an interest in the 3% surcharge cap, though he admits that he is not a party to the contract and has no way to enforce it directly.[3]

---

[3] To the extent that plaintiff would seek to enforce Visa's Rules, we note that consumers may submit complaints to Visa for the violations of the Rules and that Visa may seek to rectify those violations directly.

¶ 30    On a similar posture, the Northern District of California has dismissed an action for breach of the Visa Rules brought under a consumer fraud statute, finding that merely identifying a breach fails to establish wrongfulness or unfairness. The court stated:

"Although Williams alleges that Visa enforces the Visa Rules unevenly, the Rules were not enacted for Williams's benefit (or for the benefit of consumers generally), as the Court has already held. Moreover, Visa is not required to have *any* policy regarding debit card surcharges. When merchants follow the policy Visa does have, or when Visa enforces it, Williams receives a benefit he otherwise would not. Thus, there is no consumer injury against which to balance Visa's reasons, justifications or motives." (Emphasis in original.) *Williams v. Visa, Inc.*, No. 24-cv-08708, 2025 WL 1518044, at *8 (N.D. Cal. May 28, 2025).

¶ 31    The California court applied this reasoning to the unjust enrichment claim as well. *Id.* at *5 ("Visa's retention of a portion of the debit surcharge can be wrongful only if it had a duty to Williams not to permit such charges.").

¶ 32    We find this reasoning persuasive. The Visa Rules govern the rights and obligations of Visa and participating merchants. Although compliance with or enforcement of the Rules may incidentally benefit consumers, the Rules do not define the bounds of consumer fairness. Instead, the Rules merely govern the relationship of Visa and third-party merchants that Visa may, arguably, enforce or waive. See *id.* at *4 (Visa claims discretion not to enforce the terms of the Rules).

¶ 33    Lacking an actionable interest under a third-party contract, a consumer cannot assert that failure of a contracting party to comply with the terms of that contract constitutes unfairness to the consumer. The third-party contract simply does not define the bounds of fairness. We

10

wonder, for example, why a 3.5% surcharge would be any more fair to plaintiff if the Visa Rules actually permitted a 3.5% surcharge? And is a 3.5% surcharge any more unfair to Visa credit card users than Mastercard users simply because Visa's rules set forth a 3% cap whereas Mastercard allows a 4% surcharge? The terms of these contracts do not, on their own, define what is fair to consumers.

¶ 34      Plaintiff contends that a breach of Visa's rules alone *can* serve as the basis for a Consumer Fraud Act claim, citing *In re Michaels Stores Pin Pad Litigation*, 830 F. Supp. 2d 518 (N.D. Ill. 2011). In *Michaels*, the plaintiffs alleged that defendant stores failed to comply with Visa's global mandate, which required the use of tamper-resistant personal identification number (PIN) pads among other security measures. *Id.* at 522. The court permitted the Consumer Fraud Act claim to proceed, finding that defendant's failure to comply with the security requirements and the industry's best practices unfairly exposed plaintiffs to the theft of their credit card information. *Id.* at 526. The court further noted that defendant failed to promptly notify customers. *Id.*

¶ 35      Setting aside that *Michaels* is a federal case and therefore not binding on this court, plaintiff's reliance on *Michaels* is misplaced. The unfairness to the consumers in *Michaels* was not merely the breach of Visa's rules. Instead, the unfairness—the substantial injury—was the result of the failure of the stores to adequately secure the consumers' credit card information. The stores' failure to comply with Visa's global mandate, to comply with payment card industry PIN security requirements, or otherwise to follow the industry's best practices only served to underline how the stores failed to adequately protect consumers. We disagree with plaintiff's suggestion that *Michaels* stands for the proposition that a breach of the Visa Rules, *on its own*, constitutes an unfair practice.

¶ 36    We believe that it is not enough to identify a breach of a contract or a third-party contract to state a claim under the Consumer Fraud Act. A plaintiff must, at the very least, allege how the conduct constituting the breach is unfair with respect to the consumer. See *Demitro v. General Motors Acceptance Corp.*, 388 Ill. App. 3d 15, 21 (2009) (action was "not a simple breach of contract" where plaintiff alleged oppressive conduct that "sufficiently implicated consumer protection concerns"); *People ex rel. Hartigan v. Knecht Services, Inc.*, 216 Ill. App. 3d 843, 855-56 (1991); see also *Zankle*, 311 Ill. App. 3d at 313 ("[A] naked breach-of-contract claim does not support a Consumer Fraud Act claim.").

¶ 37    Plaintiff fails to plead anything more than a breach of contract by Yardi. Each of plaintiff's deception and unfairness arguments relies on the assumed premise that the breach of the Visa Rules is *itself* injurious to consumers, but plaintiff never justifies this premise. Instead, plaintiff glosses over the issue, asserting variously that the fees are "unauthorized," "impermissible," "unlawful," or in "violat[ion]" of the Visa Rules. Merely identifying a breach of contract between Yardi and Visa fails to crystallize how said breach is "unfair" to an affected third-party consumer. If plaintiff lacks the right to enforce the contract directly, we fail to see how he can assert the breach as the injury for a Consumer Fraud Act claim. The fact that consumers having to pay 3.5% rather than 3% surcharges on credit transactions may violate a third-party contract does not, on its own, establish unfairness. We therefore find that plaintiff has failed to state a claim under the Consumer Fraud Act.

¶ 38    We further agree with the trial court that the substance of plaintiff's allegations fails to support a claim of deceptive or unfair conduct.

¶ 39                                    B. Plaintiff Has Not Pled a Deceptive Act

¶ 40          For conduct to be considered deceptive, "it must, at the very least, create the likelihood of confusion or misunderstanding." *Aliano v. Ferriss*, 2013 IL App (1st) 120242, ¶ 26.

¶ 41          "An omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud." *Pappas v. Pella Corp.*, 363 Ill. App. 3d 795, 799 (2006). However, "an omission is not actionable as fraud if it gives rise to 'an incomplete' as opposed to an affirmatively 'false impression.' " *Ash*, 2023 IL App (1st) 220151, ¶ 33 (quoting *Phillips v. DePaul University*, 2014 IL App (1st) 122817, ¶ 40).

¶ 42          At the outset, there is no dispute that the 3.5% surcharge was disclosed prior to plaintiff paying his rent by credit card. There is no allegation that the amount of the surcharge or its purpose was misrepresented to plaintiff. Instead, plaintiff's argument is that the disclosure was deceptive because it either misrepresented or omitted the fact that the Visa Rules only authorized a 3% surcharge. Plaintiff claims that he relied on the implied representation that the 3.5% surcharge was authorized and that he would not have paid the surcharge had he been aware that it was not permitted under the Visa Rules.

¶ 43          But this simply restates the breach of contract claim: the alleged deception is that defendant did not disclose that the 3.5% surcharge would constitute a breach of the Visa Rules. Illinois courts reject attempts to plead breaches of contract as deceptive acts under the Consumer Fraud Act: "We believe that a 'deceptive act or practice' involves more than the mere fact that a defendant promised something and then failed to do it. That type of 'misrepresentation' occurs every time a defendant breaches a contract." *Zankle*, 311 Ill. App. 3d at 312. "Were our courts to accept plaintiff's assertion that promises that go unfulfilled are actionable under the Consumer Fraud Act, consumer plaintiffs could convert any suit for breach of contract into a

consumer fraud action." *Id.* Plaintiff's deception charge attempts to bootstrap a contract claim under the Consumer Fraud Act, which would be improper for the reasons already stated.

¶ 44    The deception argument is also deficient because the failure to disclose that the 3.5% surcharge exceeded the 3% surcharge permitted by the Visa Rules was not deceptive. Yardi's disclosure of the 3.5% surcharge is not deceptive because it does not make any affirmative or implicit representation relating to its contract obligations with respect to the Visa Rules. The disclosure simply informs the consumer of the payment options available and the consequences of electing to pay rent by credit card. We do not find there to be an element of deception contained in the nondisclosure of the 3% cap contained in the Visa Rules.

¶ 45    We distinguish this disclosure from plaintiff's case, *Bernhauser v. Glen Ellyn Dodge*, 288 Ill. App. 3d 984, 986 (1997), where the Second District found a car dealership's communication designating disclosed fees as "Amounts Paid to Others for You" misleading where the dealership actually pocketed the money paid. In *Bernhauser*, the language of the communication clearly implied that amounts paid toward these fees were for pass-through costs. *Id.* The communication deceptively prevented the consumers from understanding what they were actually paying for and why. In the instant case, however, there is no implied or actual representation that the surcharges complied with an unrelated contract between Yardi and Visa.

¶ 46    Nor is there any express requirement under the Consumer Fraud Act that merchants must disclose to consumers the terms of their contracts with credit card companies or, for that matter, their contracts with *any* third parties. To the extent that the legislature believes that the terms of credit card merchant agreements implicate consumer fairness issues or that their disclosure is necessary to protect consumers, it would be the legislature's prerogative to clarify that. As

written, however, the Consumer Fraud Act creates no duty for merchants to disclose the terms of contracts they have with third parties, and we decline to read such a duty into the statute.

¶ 47    We further agree with defendant's gloss that finding an implied, actionable representation in Yardi's disclosure would have far-reaching unanticipated consequences. In principle, plaintiff's theory would give consumers actionable rights under contracts they are not party to even where a disclosure to that consumer does not make any representation as to the third-party contract. In such cases, the charge of deception is too attenuated to be meaningful to a consumer, especially since the consumer lacks any enforceable right under the third-party contract.

¶ 48    Lastly, we note that Yardi represents the surcharge as a "convenience fee." The parties do not elaborate on the substance of this representation—whether the fee implies a pass-through transactional cost passed onto the consumer or whether the fee is the price the processor or landlord places on extending the privilege of an alternative payment option. Plaintiff equivocates, referring in the complaint to language in Yardi's representation that suggests the surcharges are pass-through fees, while also alleging that the surcharges are a "profit center" for Yardi. Ultimately, we do not find that the representation of a convenience fee to be affirmatively deceptive in this case. Plaintiff has not alleged that Yardi misrepresented what the convenience fee was for; plaintiff only alleges that Yardi misrepresented that the fee was authorized. We further note that the "convenience fees" label, as well as Yardi's disclosure that the fee covers "banks fees, Yardi fees, and processing network fees," flexibly entails that Yardi receives amounts exceeding the strict transaction costs of processing the tenant's payment.

¶ 49    While there is nothing illegal about a payment processor or a landlord pricing in a profit for themselves into a convenience fee attached to a payment method—a "convenience fee" describes the price set on the "convenience" of a privilege extended to a consumer—we question the propriety of merchants or businesses skimming profit off the top of junk fees that represent the cost of neither the transaction nor the underlying good or service. Whereas these fees may not be legally deceptive, we are receptive to the plaintiff's argument that such fees may, in some circumstances, be exploitative. Clearer and more precise disclosures about how such fees are allocated—to what and to whom—would promote some much-needed consumer transparency and better protect consumers.

¶ 50    C. Plaintiff's Allegations Do Not Support Consumer Unfairness or Oppressive Conduct

¶ 51    As has been established, plaintiff cannot sustain a consumer fraud claim based solely on a breach of contract. Plaintiff has not explained how the breach itself is unfair to consumers, nor has plaintiff explained how the imposition of a 3.5% surcharge on Visa credit transactions is unfair. Each of plaintiff's other glosses on unfairness inevitably falls back on the presumption that the breach or 3.5% surcharge is unfair. We consider plaintiff's remaining argument that Yardi's surcharges are oppressive.

¶ 52    "[C]harging an unconscionably high price generally is insufficient to establish a claim for unfairness under the Consumer Fraud Act. [Citation.] Rather, the defendant's conduct must violate public policy, be so oppressive as to leave the consumer with little alternative but to submit, and injure the consumer." *Saunders v. Michigan Avenue National Bank*, 278 Ill. App. 3d 307, 313-14 (1996) ("While Saunders has alleged an unconscionably high fee, this allegation alone is not enough to establish unfairness. Specifically, we find a total absence of the type of oppressiveness and lack of meaningful choice necessary to establish unfairness.").

¶ 53     Plaintiff asserts that the 3.5% surcharge for credit card payments is unfair, despite the fee-free autopay alternative, because some tenants lack sufficient funds to pay their rent in cash. Plaintiff suggests that defendant gives these illiquid tenants little choice but to submit to the "impermissible" 3.5% surcharge. Plaintiff therefore maintains that the practice is unfair because it exploits tenants who are unable to pay their rent in full.

¶ 54     While we appreciate the unfortunate reality that some market practices will inevitably affect poorer consumers more harshly, plaintiff's argument does not save his Consumer Fraud Act claim for several reasons. First, and most critically, this argument still relies on the unsupported assumption that the 3.5% surcharges, the alleged breach, are inherently unfair to the consumer. Limiting a consumer to a single option is not oppressive unless the sole option is unfair. For example, one would not say that a landlord's decision to only accept rent payments in cash is "oppressive" without more. The major premise of plaintiff's argument is that consumers are forced into an unfair option. Without an explanation as to how the 3.5% surcharges are unfair on their own, plaintiff has failed to explain how a limitation of consumer options *in practice* constitutes unfairness.

¶ 55     Second, we do not find that Yardi's options were oppressive. A fee is not oppressive where a consumer has a meaningful alternative. See *Saunders*, 278 Ill. App. 3d at 314. Yardi offers tenants a fee-free autopay option through which they may make the payments using a bank account. Consumers may avoid the surcharges imposed for payment via credit card by opting for the free alternative. Yardi has offered meaningful alternatives even if certain consumers are not equipped to take advantage of those alternatives. As plaintiff concedes, landlords are not required to accept rent payments by credit card. It is absurd, then, to suggest that Yardi acts oppressively where it gives tenants the additional option of paying by credit because some

tenants lack the funds to pay their rent in full. Appreciating that tenants may suffer any number of financial difficulties, we do not believe their lack of choice is the consequence of Yardi depriving them of meaningful alternatives.

¶ 56　　　　Ultimately, we agree with the lower court. The surcharges were not unfair or oppressive where Yardi offered consumers meaningful, free alternative payment options.

¶ 57　　　　　　　　D. Plaintiff's Unjust Enrichment Claim Cannot Stand Alone

¶ 58　　　　Unjust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery. *Mulligan v. QVC, Inc.*, 382 Ill. App. 3d 620, 631 (2008). Instead, unjust enrichment is " 'a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence.' " *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 25 (quoting *Alliance Acceptance Co. v. Yale Insurance Agency, Inc.*, 271 Ill. App. 3d 483, 492 (1995)).

¶ 59　　　　"When an underlying claim of fraud, duress or undue influence is deficient, a claim for unjust enrichment should also be dismissed." *Martis*, 388 Ill. App. 3d at 1025 (affirming dismissal of unjust enrichment claim where underlying Consumer Fraud Act claim was properly dismissed); see also *Ash*, 2023 IL App (1st) 220151, ¶ 43.

¶ 60　　　　Plaintiff's unjust enrichment claim is predicated on the same underlying conduct as the Consumer Fraud Act claim. Because the Consumer Fraud Act claim cannot stand, plaintiff's unjust enrichment claim was also properly dismissed.

¶ 61　　　　　　　　　　　　　III. CONCLUSION

¶ 62　　　　For the reasons stated, we affirm the trial court's order dismissing plaintiff's Consumer Fraud Act and unjust enrichment claims.

¶ 63          Affirmed.

No. 1-24-2062

---

### *Arcangel v. Yardi Systems, Inc.*, 2026 IL App (1st) 242062

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 23-CH-9957; the Hon. Cecilia Horan, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Martin W. Jaszczuk, Margaret M. Schuchardt, and Akshay Soman, of Jaszczuk P.C., and Matthew Peterson, of Consumer Law Advocate, PLLC, both of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Justin M. Penn, of Hinshaw & Culbertson LLP, of Chicago, and Ryan D. Watstein, Benjamin D. Williams, and James M. Ruley, of Watstein Terepka LLP, of Atlanta, Georgia, for appellee. |